I-XL EASTERN FURNITURE CO., Inc., and I-XL Furniture Co., Inc., Appellants,

v.

HOLLY HILL LUMBER COMPANY, a South Carolina corporation, Appellee.

No. 7461.

United States Court of Appeals Fourth Circuit.

Argued Oct. 16, 1957.

Decided Jan. 6, 1958.

Bernard H. Sokol, Chicago, Ill. (Hagood, Rivers & Young, Charleston, S. C., and G. L. B. Rivers, Charleston, S. C., on brief), for appellants.

T. B. Bryant, Jr., Orangeburg, S. C., and Robert McC. Figg, Jr., Charleston, S. C., for appellee.

Before SOPER and SOBELOFF, Circuit Judges, and THOMPSON, District Judge.

THOMPSON, District Judge.

I-XL Furniture Company, Inc., an Indiana corporation, and I-XL Eastern Furniture Company, Inc., a Pennsylvania corporation. were plaintiffs in the District Court, and Holly Hill Lumber Company, a South Carolina corporation, was defendant in the District Court. I-XL Eastern Furniture Company, Inc. is a wholly owned subsidiary of I-XL Furniture Company, Inc. and, as their interests in this action are the same, they will be hereafter referred to as "I-XL", and Holly Hill Lumber Company will hereafter be referred to as "Holly Hill".

This is an action by I-XL against Holly Hill for damages for alleged breach of contract. Holly Hill denied any liability to I-XL and asserted a counterclaim against it for unpaid invoices and damage for wrongful cancellation of contracts. All the issues were referred to a special master, and on the filing of the master's report both I-XL and Holly Hill excepted to certain of his findings. The

Court heard no evidence, but decided the issues upon the evidence adduced before the special master, and entered judgment in the sum of $15,128.66 for Holly Hill on its counterclaim. From this judgment I-XL appealed. The pertinent facts are:

I-XL was engaged in the manufacture of kitchen cabinets in Goshen, Indiana. In the spring of 1952, it was unable to supply the demands of its customer, Montgomery-Ward, from its plant in Goshen, on a competitive price basis, by reason, among other things, of its shipping costs to the East. It decided to establish a plant in the East, and discussed with Holly Hill, then engaged in the manufacture of hardwood dimension lumber at Holly Hill, South Carolina, the proposition of supplying it with manufactured or machine parts for the various types of cabinets it proposed to supply Montgomery-Ward. It was understood by the parties that these parts were to be manufactured according to specifications, and each of the several parts required to assemble a cabinet was supposed to be manufactured with such precision that it would accurately fit its counterpart. After considerable negotiation, Holly Hill undertook to furnish to I-XL the necessary parts to assemble the cabinets. I-XL acquired an assembly plant at Woodbury, New Jersey. Further negotiations were had with reference to the details of the agreement and Holly Hill received its first order under date of July 22, 1952, which called for deliveries on August 15th and September 1st, at the Woodbury plant. While both parties expected to do business together over a period of time, neither was willing to enter into a long term agreement, so they operated on an order by order basis. Holly Hill commenced this work as soon as it could secure the required machines.

After work began, there was considerable correspondence between the parties concerning specifications, quantity and quality of materials shipped and to be shipped, as well as the dates of shipment. The materials were not being shipped according to the delivery dates on the order. In an effort to get the shipments moving into Woodbury, I-XL sent its factory foreman to Holly Hill's plant on two occasions to assist it in the manufacture of these parts and to expedite operations. He stayed about ten days in August and about two weeks in September. Portions of the order were shipped as the parts were manufactured, and I-XL reported to Holly Hill about certain defects and shortages in the parts being shipped. Miller, President of Holly Hill, went to Woodbury, and conferred with the officials of I-XL with reference to these complaints and, while there, it was agreed that all defective material should be returned to Holly Hill, and it would either replace the same or give I-XL credit for it, and it was also to make up or credit I-XL with all shortages.

While the first order was not completed within the time stated, I-XL understood the reason for the delay, willingly accepted all late shipments, was in constant touch with the progress of production, and at all times indicated to Holly Hill that it was looking forward to the receipt of the remainder of the order. It paid Holly Hill's invoices regularly, the last one dated November 15, 1952, in the amount of $4,140.54, having been paid on December 19, 1952. It was understood by the parties, by reason of the exact fittings required, that all of the defects could not be determined until the cabinets were actually assembled, and that the return of the visibly defective material, or payment of invoices, was in no way to prejudice the right of I-XL to return the defective parts that were discovered on assembly.

On November 5, 1952, I-XL gave Holly Hill a second order, with a schedule for the delivery of certain parts, in certain quantities, in successive weeks. Holly Hill began work on the second order while still making deliveries under the first order. The deliveries under the second order were substantially in accord with the called for schedule. Under the

second order, Holly Hill submitted invoices to I-XL in the sum of $13,032.19, which were not paid. Under date of December 16th, I-XL wrote Holly Hill it was returning its entire accumulation of rejected stock. The last shipment under the second order was on December 17th. On December 18th, I-XL sent a telegram to Holly Hill cancelling both orders, stating that the cancellation was due to defective merchandise and late shipments and that no more shipments would be accepted. I-XL then closed its Woodbury plant and shipped all materials on hand to its plant at Goshen, Indiana. Some of Holly Hill's material had been assembled into cabinets at Woodbury and transferred to Goshen in cabinet form; most of it, however, was transferred to Goshen as parts in the same form received from Holly Hill.

At the time of the cancellation of the contracts, I-XL was undergoing a change in management, which resulted in the replacement of its top executives. I-XL refused to pay the invoices under the second order, claiming that much of the material it had transferred to Goshen was defective and not usable. Pursuant to a request of the officials of I-XL, Miller, President of Holly Hill, visited the Goshen plant to inspect the material and to effect a settlement of its claim, but no settlement could be reached and this action was begun.

I-XL sought to recover from Holly Hill the $44,931.64 it had paid on the first order; it denied liability for the material shipped under the second order in the amount of $13,032.19; it claimed damages for the delay in the deliveries and for the failure of the parts to meet specifications. Holly Hill contended the first order was substantially filled at the time of the cancellation of the contract; that delay in the deliveries had been waived by I-XL; that it had wrongfully cancelled both contracts; it sought to recover the amount of its unpaid invoices and damages for the wrongful cancellation of the contracts.

The special master found that I-XL had waived the time element on the deliveries and had no right to cancel the contracts for that reason; he also found that the parties had agreed that Holly Hill was to make up all shortages and replace defective parts, and, therefore I-XL had no right to cancel the contracts because of shortages or defects in the parts.

The District Court was of the opinion that time was not of the essence of the first contract, and, therefore, was not a controlling factor, but held if time was a factor, the delays had been waived. It found that the second order was being filled substantially on schedule, and accordingly, any delay in the time of the deliveries was not a ground for cancellation under either contract. It also found Holly Hill was prevented from making up the shortages and replacing the defective materials by I-XL's arbitrary cancellation of the contracts, and it was of the opinion that the change in the management of I-XL was the underlying reason for the abrupt cancellation of the two contracts.

With reference to the amount of the recoveries, the District Court held that Holly Hill was entitled to recover from I-XL its unpaid invoices in the sum of $13,032.19, and $4,561.47 damages sustained by reason of its loss on materials on hand at the time of the cancellation of the contract, a total of $17,693.60, subject to a credit to I-XL for the value of the accumulated rejected parts returned to Holly Hill in the amount of $2,300, and the defective parts in the last shipment to Woodbury on December 16th in the amount of $165. Judgment was entered in Holly Hill's favor for the sum of $15,128.66.

An exhaustive analysis of the evidence and the many exhibits was made by the Court below. It is fundamental that this Court should not disturb the findings of the District Court under such circumstances unless we are satisfied they were clearly erroneous. Jersey

Insurance Company of New York v. Heffron, 4 Cir., 242 F.2d 136, at page 139 wherein it was stated:

"While the Court of Appeals has broader powers in reviewing a District Judge's findings of fact than in reviewing the findings of a jury, United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746, it will not disturb his findings merely because it may doubt their correctness. It is required that the Court of Appeals be satisfied that the District Judge is clearly in error before it will set his findings aside."

■ We agree that I-XL wrongfully cancelled the two orders. It was known to I-XL when it contracted with Holly Hill for these precision parts that it could not expect all of the parts to meet its specifications until Holly Hill had a reasonable time within which to acquire new machinery and adjust its production to I-XL's requirements. I-XL knew of the difficulties that Holly Hill was encountering; it cooperated by sending its foreman to the Holly Hill plant on two occasions to assist in getting production under way; it willingly accepted each delivery, although made much later than the original date called for; it was in close touch with Holly Hill by correspondence and telephone, and in each letter it indicated that it was looking forward to the receipt of the remainder of the order; it paid all of Holly Hill's invoices as presented, the last one dated November 15th in the amount of $4,140.-54, having been paid on December 19th; on November 5th, while Holly Hill was still furnishing parts under the first order, I-XL gave Holly Hill a second order approximately half the size of the first order. There are many other facts and circumstances which, considered along with the foregoing, show clearly that I-XL cancelled the contract without just cause. However, it does not follow that because it wrongfully cancelled the contracts it is not entitled to recover for the defective parts or to have credit for the same. The District Court allowed it $2,300 for the visibly defective parts that had been returned to Holly Hill and $165 for the visibly defective parts in the last shipment which arrived in Woodbury after I-XL had closed its plant. The allowance of the $2,300 was first made by the special master, based on the average weight of shipments made. This allowance, the Court felt, could be more accurately fixed by the introduction of evidence of value, since a list of the returned materials was in evidence. Accordingly, the master was instructed to reopen this phase of the case. At the rehearing, however, I-XL introduced no evidence and the Court sustained the master's original findings. Holly Hill admitted there were probably defective materials of the value of $165 in the last shipment to Woodbury and I-XL offered no direct evidence to support a larger loss. In view of the lack of evidence submitted by I-XL on the items of $2,-300 and $165, we think these allowances were generous. At the second hearing before the special master, Holly Hill introduced definite proof, which was uncontradicted, in support of the item of $4,561.47 allowed as damages to Holly Hill on account of useless manufactured parts on hand at the time of the cancellation of the contracts.

■ The District Court was of the opinion that I-XL was not entitled to recover for the latent defects in the parts that were shipped from Woodbury to Goshen on the theory that the sale was consummated in Woodbury, after visual inspection, subject only to buyer's right to return defective material subsequently discovered at the time of assembly at Woodbury. Under the facts in this case we do not agree that I-XL lost its right of recovery for defectively manufactured parts which could not be discovered until assembled, merely because the parts were shipped from Woodbury to Goshen. However, we reach the same conclusion as did the District Court, for there is no evidence in the record on which we can rely

as to how much of the inventory shipped to Goshen was defective, or what use was made of it. Indeed, the record does not disclose either the size or the value of the inventory removed from Woodbury to Goshen. I-XL relies solely on the statements of witnesses that none of the inventory was usable. Yet, some witnesses admitted that part of this material was used at Goshen. If I-XL had kept a reasonably accurate list of the material discarded on assembly at Goshen and its value, we would have been more favorably impressed. I-XL states in its brief:

" * * * Actually, the heart of the plaintiff's case is that it did not get that for which it had paid. * * * "

If so, it was incumbent upon the plaintiff to show the Court by credible evidence the quantity and value of the material which it had paid for and did not receive. It was given ample opportunity to prove the damages it claimed, but it utterly failed to do so and it cannot now be heard to complain of its own dereliction.

As this Court said in Johnston Mfg. Co. v. Wilson Thread Co., 4 Cir., 269 F. 555, 558:

"A verdict for substantial damages cannot stand on mere proof of a breach of contract and a vague estimate by claimant of the damage, when the damage is of such a nature that the amount is susceptible of definite proof, and that proof is in possession of the claimant. * * Doubtless the defendant is entitled to some allowance for defect in the quality of the yarn, and it is to be regretted that it failed to offer proof from which its damage could be justly and definitely ascertained."

We have considered all the issues before the Court in this case and we perceive no reversible error in the findings of the District Court. Accordingly, the judgment of the District Court is affirmed.

Affirmed.