**JERSEY INSURANCE COMPANY OF NEW YORK, Appellant,**

v.

**Charles J. HEFFRON, Jr., Appellee.**

**No. 7357.**

United States Court of Appeals
Fourth Circuit.

Argued Jan. 25, 1957.

Decided March 2, 1957.

William H. Grimball, Jr., and Robert McC. Figg, Jr., Charleston, S. C., for appellant.

R. M. Hollings, Charleston, S. C. (Meyer, Goldberg, Hollings, Lempesis & Uricchio, Charleston, S. C., on the brief), for appellee.

Before SOBELOFF, Circuit Judge, and HARRY E. WATKINS and GILLIAM, District Judges.

SOBELOFF, Circuit Judge.

In a suit on a policy insuring against direct loss by explosion, the plaintiff alleged that his property was damaged when an explosion, resulting from causes unknown to him, occurred on premises adjoining his, blowing a hole in his wall and showering his dwelling with bricks and debris. The insurance company admitted the damage to the plaintiff's property, but defended on the ground that it did not result from any explosion. According to its version, the property adjoining the plaintiff's simply collapsed, and the plaintiff's house was damaged by falling building materials. As the principal question raised here is whether or not there was sufficient evidence to support the District Judge's finding that the damage was caused by explosion, a somewhat detailed recital of the testimony is unavoidable.

The plaintiff's property is No. 47, on the south side of Queen Street, Charleston, South Carolina, improved by a two-story frame dwelling approximately twenty-five feet wide and fifty feet long. Adjoining it on the west was No. 49 Queen Street, an old brick building.

formerly used as a post office garage. This was two stories high, with a frontage of forty feet and a depth of approximately one hundred feet. The second floor rested on joists forty feet in length, extending from the east to the west wall and supported by these walls. The second floor had no center supports. The roof, constructed of wood sheathed with tin, was supported by wooden trusses of mortise and tenon construction, bearing on the same east and west walls. The east edge of the roof overhung the east wall, along which was a gutter. The west edge of the roof was flushed to the west wall, which continued upward above the edge of the roof to form an escarpment, or fire wall. A space approximately ten and one-half feet wide separated the east wall of the old post office garage from the west wall of the plaintiff's house. As the back porch of the plaintiff's house was narrower than the rest of the building, the distance between the west edge of the porch and the east wall of the garage was eighteen feet.

On December 4, 1951, the garage was destroyed amid considerable noise or a train of noises, variously described by witnesses. One declared that it sounded "like a bomb exploding"; others called it a "loud, sharp explosion noise"; "a terrible noise like a roar and then a crash"; "a terrific roar"; "a rumbling, and my first impression was that it was an earthquake"; "a crack-up and rumbling sound and then a large crash."

The north and south walls of the garage were substantially unaffected, but the east and west walls fell or were blown out, so that the west wall went to the west and the east wall, to the east. There is no direct proof as to what happened in 49 Queen Street to cause the damage, and the parties draw conflicting inferences from circumstances most of which are themselves not seriously disputed.

The District Judge found as a fact that the forces involved in the destruction of the garage were such as to propel large pieces of brick, mortar, and other debris to the plaintiff's roof with sufficient force to dent and puncture its tin covering. The Judge thought it significant that this happened despite the fact that the plaintiff's roof is higher than the brick wall of the garage. The gutter along the west edge of the plaintiff's roof, which was likewise higher than the garage wall, was crushed and filled with brick and debris. The sashes and screens of the plaintiff's second-story windows, and the window casing, were loosened near the rear corner of the west side of the house, and the rear half of the west wall of the house, at the first floor level, was completely knocked in, including framing, studs, sheathing, and even interior walls. The plaintiff's house, as an entirety, was moved over on its foundations. The foundation piers were cracked, as was interior plaster, to a width of two inches. Columns supporting the back porch, eighteen feet from the east wall of the garage, were gouged at a point eighteen feet, eight inches above the ground. Railings on the second floor porch were knocked down. Some bricks and debris were found at a distance of eighty-four feet from the nearest garage wall.

It was found as a fact that "At the conclusion of the catastrophe the center point of the east wall of the Old Post Office building was found to have disintegrated down to a point three and one-half feet above the ground, but to the rear or south of the center of the building, the east wall had disintegrated right down to the ground level." It was reasoned by the Judge that "* * * if the east wall of the Old Post Office garage opposite the back porch of plaintiff's residence had fallen in an intact mass from a point at ground level, it would have struck the second floor column of the porch at a point approximately seventeen feet above ground level." The point of impact, as stated above, was eighteen feet, eight inches above the ground.

Two significant findings are as follows:

"The breaking of structural members and roof trusses of the de-

stroyed building were not of an extent nor predominantly of a character which could have exerted upward and outward forces against the brick work of the east wall of the building and were not of the extent or character which could have flicked bricks and loose mortar onto plaintiff's roof or into plaintiff's gutter, when due regard is had to the height and distances of plaintiff's building, to the quantity and size of the debris deposited on plaintiff's roof and in his gutter and to the fact that the force of the debris was sufficient to puncture plaintiff's tin roof."

"Due to an outward movement of the weakened west wall of the Old Post Office Garage building the western ends of the roof trusses and the western ends of the floor joists lost their bearings on the west wall, and the western edge of the roof and of the floor fell suddenly in an arc downward and eastward entrapping and creating a build-up of air pressure within the building, which pressure, when exerted against the east wall of the building, caused the east wall suddenly to burst and rupture and, in effect, blasted a portion of the east wall outward and upward against and upon plaintiff's residence."

■■ With the last quoted finding the defendant takes particular issue. It is, of course, beyond dispute that the burden of proof is upon the plaintiff, but this is not to say that the circumstantial proof must amount to absolute demonstration beyond all reasonable doubts. Kyle v. Swift & Co., 4 Cir., 229 F.2d 887, 889. In this case the facts do not compel the conclusion reached by the Court as to the manner in which the damage to plaintiff's property occurred, but we cannot say that the conclusion was without substantial basis. While the Court of Appeals has broader powers in reviewing a District Judge's findings of fact than in reviewing the findings of a jury, United States v. United States Gypsum Co., 333 U.S.

364, 395, 68 S.Ct. 525, 92 L.Ed. 746, it will not disturb his findings merely because it may doubt their correctness. It is required that the Court of Appeals be satisfied that the District Judge is clearly in error before it will set his findings aside. Federal Rules Civ.Proc., rule 52(a), 28 U.S.C.A.

■ We cannot say that the Judge's processes of reasoning are inadmissible in the circumstances shown by this record. There was evidence to indicate a violent release of energy, accompanied by noise. In addition, as we have seen, there was testimony as to the propulsion of debris to the plaintiff's roof, as well as to other points beyond where gravity alone would carry it. There is also the curious fact that the second floor windows of the north and south walls of the garage remained intact, while those on the first floor were broken. Plaintiff's explanation, which we think plausible and which admits of the inference of an explosion, is that the roof, falling intact like a huge piston while still hinged to the eastern wall, gradually built a compression of air not sufficient to affect the second story windows but great enough to burst the first story windows when the roof descended to that level. This theory, relied upon by the Judge in explaining the origin of the explosion which scattered the eastern wall upon the plaintiff's dwelling, is not beyond the legitimate inferences permitted by the evidence.

■ The appellant argues that even if there was an explosion, it is not covered by the policy, because it was merely incidental to the collapse of the building. We think this contention without merit, for it is immaterial where in the chain of causation the explosion occurs. Every explosion is initiated by some primary event.

■■ The insurer further contends as a matter of law, that even if it be assumed that the damage was occasioned as the plaintiff claims and as the District Judge found, this is not an explosion within the meaning of the "Extend-

ed Coverage" provision of the policy.[1] While neither the specific inclusions nor exclusions provide a definite answer to the question now before us, it will be seen that the rider, issued "in consideration of the premium for this coverage," gives much broader protection than the original policy. Cases adjudicating claims for explosion damage must be read with discrimination, for the language used is not the same in all policies. Here no definition is provided for the word "explosion," except to declare that certain named risks are included and certain others, excluded. As these furnish no guide in the present situation, our recourse must be to the ordinary meaning of the word. The event, as found by the District Judge, was a compression and sudden, violent expansion of air; in other words, a violent release of energy causing a rupture, accompanied by noise. In fairness, reason, and common usage, the word "explosion" may be used to describe such an event, and this is not precluded by any exception in the insurance rider.

■■ The appellant seems to take issue with the definition of the word "rupture," which is used by the Court. It claims that "rupture" connotes a "gradual" rather than a "sudden" happening, as in an explosion. We think the word is not so restricted. As the insurer prepared the policy, any ambiguity is to be resolved against it and liberally in favor of the insured. Aschenbrenner v. United States Fidelity & Guaranty Co., 292 U.S. 80, 85, 54 S.Ct. 590, 78 L.Ed. 1137; Missouri State Life Insurance Co. v. Guess, 4 Cir., 17 F.2d 450, 452; Indemnity Insurance Co. of North America v. Sloan, 4 Cir., 68 F.2d 222, 225; Ness v. Mutual Life Insurance Co. of New York, 4 Cir., 70 F.2d 59, 61.

The judgment of the District Court will be

Affirmed.

---

1. The pertinent provision of the original policy is as follows:

"Inherent Explosion Clause—This policy shall cover direct loss to the property covered caused by explosion occurring in the above described dwelling or appurtenant private structures or in any structure containing property covered hereunder from hazards inherent therein, but this Company shall not be liable for loss by explosion originating within steam boilers, steam pipes, steam turbines, steam engines, fly-wheels."

The rider is as follows:

"Extended Coverage. (Perils of Windstorm, Hail, Explosion, Riot, Riot Attending a Strike, Civil Commotion, Aircraft, Vehicles, Smoke, Except as Hereinafter Provided.) In consideration of the premium for this coverage shown on the reverse side hereof, and subject to provisions and stipulations (hereinafter referred to as 'provisions') herein and in the policy to which this Extended Coverage is attached, including riders and endorsement thereon, the coverage of this policy is extended to include direct loss by WINDSTORM, HAIL, EXPLOSION, RIOT, RIOT ATTENDING A STRIKE, CIVIL COMMOTION, AIR-CRAFT, VEHICLES AND SMOKE. * * * Provisions Applicable Only to Explosion: Loss by explosion shall include loss resulting from the explosion of accumulated or unconsumed fuel within the fire box (or the combustion chamber) of any fired vessel or within the flues or passages which conduct the gases of combustion therefrom but this Company shall not be liable for loss by explosion, rupture or bursting of steam boilers, steam pipes, steam turbines, steam engines or fly-wheels, owned, operated or controlled by the Insured or located in the building (s) described in this policy.

"Any other explosion clause made a part of this policy is superseded by this Extended Coverage."