**MACON LIGHT HOUSE REVIVAL CENTER, INC., et al., Plaintiffs,**

v.

**The CONTINENTAL INSURANCE COMPANY, Defendant.**

**Civ. A. No. 85–190–1–MAC (WDO).**

United States District Court,
M.D. Georgia,
Macon Division.

Jan. 15, 1987.

John E. James, Macon, Ga., for plaintiffs.

Wallace Miller, III, Macon, Ga., for defendant.

## ORDER

OWENS, Chief Judge.

This case is brought by plaintiffs, Macon Light House Revival Center, Inc., d/b/a Faith Baptist Temple, Inc. and Dr. Ernest Saloom d/b/a Macon Light House Revival Center, in order to recover under a policy of insurance issued by defendant The Continental Insurance Company (Continental). By agreement of all the parties, this case has been submitted to the court for a decision on the merits based upon the evidence in the record. The parties, therefore, have waived any right to a trial by jury that they might otherwise have been entitled to in this case. Furthermore, the parties have agreed to have the court decide the issues concerning damages at a later date, depending upon whether coverage is found to exist under the policy of insurance.

### Factual Background

On May 25, 1984, the church facility known as the Macon Light House Revival Center was destroyed. The exact reasons for the damage to the structure are contested, but the parties generally agree that some form of structural failure was triggered by a mechanism which cannot be specifically identified. *See* Pre-Trial Order submitted by the parties. Plaintiffs contend that the loss in this case was caused by a peril that defendant Continental has insured against in its policy of insurance issued plaintiffs, namely, that the loss was caused by an "explosion," as that term is defined by the policy of insurance. More specifically, it is plaintiffs' contention that as the roof of the structure collapsed, the air trapped inside the building was compressed, and as this air was further compressed, an "explosion" within the terms of the policy ensued causing damage to the insured structure. Contrary to plaintiffs' assertions, defendant Continental contends that the structure was destroyed not because of any "explosion," but, rather, merely because of structural failure, a peril not insured against under defendant Continental's policy of insurance. Defendant further asserts that even if the structure failed in the manner described by plaintiffs, such is not an "explosion" that would be covered under its policy of insurance. Inspection of the structure after its destruction did not reveal any evidence of combustion or fire that might normally be anticipated when an explosion has occurred.

### Coverage under the Policy

Plaintiffs procured a policy of insurance from defendant Continental to cover the structure known as the Macon Light House Revival Center. The policy of insurance issued was a Special Multi-Peril Policy which insured plaintiffs against losses sustained as a result of certain specified perils to the structure (Section I) and against personal liability arising out of these perils (Section II).

The General Conditions set out at the beginning of the policy contains conditions that apply throughout the policy, unless otherwise indicated in the specific sections, and incorporates additional definitions which appear near the end of the policy. The policy then provides for conditions and definitions applicable to Section I and Section II. Section II, dealing with personal liability, is not at issue in this case.

Section I of the policy provides coverage for: the structure ("including attached additions and extensions; fixtures, machinery and equipment constituting a permanent part of and pertaining to the service of the building"); materials and supplies intended for use in construction, alteration or repair of the building or structure; yard fixtures; and personal property of the insured used for the maintenance or service of the building ("including fire extinguishing apparatus, outdoor furniture, floor coverings and appliances for refrigerating, ventilating, cook-

ing, dishwashing and laundering (but not including other personal property in apartments or rooms furnished by the named insured as landlord")).

The types of perils insured against and their "meaning" is provided for by the policy in the following manner:

This policy insures against all direct loss to the property covered under this form caused by:

A. FIRE.

B. LIGHTNING.

C. WINDSTORM OR HAIL,....

D. EXPLOSION, including direct loss resulting from the explosion of accumulated gases or unconsumed fuel within the firebox (or combustion chamber) of any fired vessel or within the flues or passages which conduct the gases of combustion therefrom.

1. This Company shall not be liable for loss by explosion of steam boilers, steam pipes, steam turbines or steam engines, if owned by, leased by or operated under the control of the insured.

2. The following are not explosions within the intent or meaning of these provisions:

(a) Shock waves caused by aircraft, generally known as "sonic boom",

(b) Electric arcing,

(c) Rupture or bursting of rotating or moving parts of machinery caused by centrifugal force or mechanical breakdown,

(d) Water hammer,

(e) Rupture or bursting of water pipes,

(f) Rupture or bursting due to expansion or swelling of the contents of any building or structure, caused by or resulting from water,

(g) Rupture, bursting or operation of pressure relief devices.

E. SMOKE,....

F. AIRCRAFT OR VEHICLES,....

G. RIOT, RIOT ATTENDING A STRIKE OR CIVIL COMMOTION,....

H. VANDALISM OR MALICIOUS MISCHIEF,....

The policy further excludes from coverage:

A. Loss occasioned directly or indirectly by enforcement of any ordinance or law regulating the use, construction, repair, or demolition of buildings or structures including debris removal expense.

B. Loss occasioned directly or indirectly by any electrical injury or disturbance to electrical appliances, devices, fixtures or wiring caused by electrical currents artifically generated *unless fire as insured against ensues, and then this Company shall be liable for only loss caused by the ensuing fire.*

C. Loss caused directly or indirectly by the interruption of power or other utility service furnished to the designated premises if the interruption takes place away from the designated premises. *If a peril insured against ensues on the designated premises, this Company will pay only for loss caused by the ensuing peril.*

D. Loss caused by, resulting from, contributed to or aggravated by any of the following:

1. earth movement, including but not limited to earthquake, landslide, mudflow, earth sinking, earth rising or shifting;

2. flood, surface water, waves, tidal water or tidal wave, overflow of streams or other bodies of water, or spray from any of the foregoing, all whether driven by wind or not;

3. water which backs up through sewers or drains; or

4. water below the surface of the ground including that which exerts pressure on or flows, seeps or leaks through sidewalks, driveways, foundations, walls, basement or other floors, or through doors, windows or any other openings in such sidewalks, driveways, foundations, walls or floors;

*unless fire or explosion as insured against ensues, and then this Company shall be liable for only loss caused by the ensuing fire or explosion.*

(emphasis added). The policy of insurance does not contain any provisions relating to damage caused solely by structural failure or collapse.

### Conclusions of Law

 The test in construing an insurance policy is not what an insurer intended its words to mean, but rather, what a reasonable person in the position of the insured would understand them to mean. The policy should be read as a layman would read it and not as it might be analyzed by an insurance expert or an attorney. *See Georgia Farm Bureau Mutual Insurance Company v. Joiner International, Inc.*, 177 Ga.App. 233, 339 S.E.2d 284 (1985). In other words, the plain and obvious meaning of the words utilized should be used in determining the coverage provided for under the policy. *See Cherokee Credit Life Insurance Co. v. Baker*, 119 Ga.App. 579, 168 S.E.2d 171 (1969). Georgia case law has made use of the dictionary in supplying the plain meaning of words used. *See Salmon v. Commercial Union Insurance Co.*, 154 Ga.App. 8, 267 S.E.2d 273, 274 (1980). Applying this law, the court must ascertain whether the term "explosion," as used in the policy, would encompass damage caused solely by increased air pressure within a structure that is suddenly released when the containment of the pressure gives way.

Looking to the insurance policy itself for guidance as to whether plaintiffs' allegations would constitute an "explosion" under the policy, the court finds that none of the specific limitations listed in (D)(1) or (D)(2) apply to the present case. While the policy provides for what is not an "explosion" within the intent or meaning of the policy, it does not attempt to provide for a comprehensive definition of the term. In addition, none of the exclusions in the policy appear to be pertinent to the question before the court. Accordingly, the court must look to relevant case law to provide a definition to the term "explosion."

A review of the case law in which courts have attempted to define the term "explo-sion" reveals that this is a term insusceptible of fixed definition. *See American Casualty Company of Reading, Pennsylvania v. A.L. Myrick*, 304 F.2d 179, 183 (5th Cir.1962). This fact is borne out by the cases that have considered the term's definition. For example, in *Commercial Union Fire Insurance Co. v. Bank of Georgia*, 197 F.2d 455, 456 (5th Cir.1952), a federal diversity case involving a Georgia plaintiff, the Fifth Circuit was required to define the term "explosion." Rather than give an all-inclusive definition of the term, the Fifth Circuit stated generally what an "explosion" entails. The Fifth Circuit stated,

> [A] an explosion is a rapid, sudden, and violent expansion of air or relinquishment of energy, causing a rupture and accompanied by a loud noise, not necessarily extremely loud.... It has been said that there is no difference in ordinary usage between explode and burst; the ordinary idea is that the explosion is the cause while the rupture is the effect.

197 F.2d at 456. The Fifth Circuit went on to state that a bursting or explosion is caused by excessive pressure, and the pressure is caused by pent-up energy. Most importantly, the Fifth Circuit held that it made no difference whether this pent-up energy was generated by molecular changes, breaking down of the atom, chemical reaction, or the movement of water, in determining whether an "explosion" occurred. Thus, lack of evidence of combustion in the structure is not conclusive evidence that an "explosion" did not occur.

Another case that dealt with the issue involved in this case is *Jersey Insurance Company of New York v. Heffron*, 242 F.2d 136, 139–40 (4th Cir.1957). In *Heffron*, the Fourth Circuit was faced with a nearly identical factual allegation, namely that a roof's collapse acted like a piston in building up air pressure within the structure. The ensuing destruction caused by this air pressure was found to be within the reasonable definition of the term "explosion," and thus, the loss was held within the policy's coverage.

Based upon this case law, it is this court's opinion that a Georgia court faced with the factual allegations of plaintiffs' claim would find that any damage caused in the manner alleged would be a peril defendant Continental had obligated itself to insure against under the policy of insurance issued. In other words, a reasonable interpretation of the term "explosion" would include the factual scenario in which damage to the structure was caused by air pressure building up inside the building as the roof collapsed, and then escaping violently as the air pressure burst its containment. Furthermore, the fact that the "explosion" was caused by a peril not insured against, namely structural failure, would not relieve defendant Continental of damage proximately resulting from the explosion. *See Ovbey v. Continental Insurance Company*, 613 F.Supp. 726 (N.D.Ga.1985), *aff'd*, 782 F.2d 178 (11th Cir.1986). It would only relieve it from liability for damage that would have occurred without the ensuing explosion. *Id.*[1]

Deciding that plaintiffs allegations state a prima facie case for coverage under the policy does not answer the question of whether, in fact, such an "explosion" actually occurred. Plaintiffs must still prove by a preponderance of the evidence that pent-up air pressure, created by the collapse of the structure's ceiling, caused the damage involved in this case. After reviewing all of the evidence in the record the court finds that the plaintiffs have proven by a preponderance of the evidence:

(1) that some sort of structural failure caused the roof of the building to collapse;

(2) that as the roof collapsed, air pressure built up inside of the structure (Garza dep., p. 20);

(3) that this air pressure combined with the forces of the collapsing roof to damage the walls of the structure (Garza dep. p. 23–24; Skalko dep., p. 37);

(4) but that not all of the damage to the walls was caused by this build-up of air pressure, rather, most of the damage occurred as a result of the roof collapsing inward on itself (Bishop dep., pp. 7, 9 and 10).

Plaintiffs have, therefore, met their burden of demonstrating that an "explosion" within the terms of the policy occurred. The evidence, however, is wholly insufficient to meet their burden of proof of demonstrating what damages proximately resulted from this "explosion," or alternatively, what damages were caused by the structural failure itself.

Under Georgia law, plaintiffs must demonstrate to a reasonable certainty what damages proximately resulted from the "explosion."[2] *See Georgia Mutual Insurance Co. v. R.P. Ford*, 95 Ga.App. 748, 98 S.E.2d 577 (1957). Even though plaintiffs have met their burden of showing that some sort of explosive air pressure caused damage to the insured structure, the evidence fails to provide a basis upon which a trier of fact could determine with reasonable certainty what additional damage to the structure was caused by the explosion that would not have been caused if an explosion had not ensued. While the evidence indicates that air pressure probably caused some damage to the structure, the expert witnesses could only speculate as to what damages resulted from the air pressure as opposed to damages resulting from the roof falling inward.[3] The best evidence

---

1. This conclusion is buttressed by the policy itself. For example, the exclusion sections recognize that if a peril insured against ensues from an excluded danger, Continental is liable only for the loss caused by the ensuing peril. *See* emphasized portions of exclusion sections, *supra.*

2. For example, if the structural failure caused the roof to collapse, the damage to the roof would not be covered by this policy of insurance. *See Ovbey, supra.* If the roof falling

caused the walls to explode outward, and this damage would not have occurred but for the "explosion," then damage to the walls could be covered under the policy.

3. For example, Mr. Skalko testified in the following manner about the damage to the structure:

A. I don't know if I'm answering your question, but let me just offer an observation of what I saw when I arrived at the scene.

plaintiffs presented of increased damage proximately resulting from the explosion was the damage to the wall facing the parking lot. While it appears that this wall blew out from the explosion, the evidence fails to demonstrate that this wall, unlike the other walls, would not have been damaged absent the explosion. Without this type of evidence, plaintiffs have failed to meet their burden of proof on the issue of what damages proximately resulted from the insured peril of "explosion." Accordingly, this court finds that plaintiffs have failed to prove by a preponderance of the evidence what damages proximately resulted from the explosion of pent-up air pressure within the structure, and, therefore, ORDERS that judgment be entered in favor of defendant Continental Insurance Company on the issue of its liability to plaintiffs under the policy of insurance.

That the fact that the roof came downward it was noticeable in a number of areas that the exterior walls went in an outward direction, *some which could very possibly be connected to the fact that the structure kicked them out and some, especially this wall probably, it would be a good case where something just, if you want to call it whatever, air pressure or what, something popped it out.* I mean, it just basically came outward.

Q. When you say, this wall, you are looking at Exhibit Cl—

A. That's the north wall—

Q. —and that is the wall facing the parking lot, or the rear of the building?

A. That is correct.

Q. And it appears that some kind of pressure or force popped that wall out?

Q. Would that have been because the roof in falling would have reduced the volume of the interior and compacted the air on the interior of the—

A. *I could see that is a very viable possibility.*

(Skalko dep., pp. 36–37) (emphasis added).