**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff,**

v.

**J.H. STANLEY, Individually and as Temporary Administrator of the Estate of Mary Ann Stanley, Deceased, Betty B. Blocker, Merriam Kenneth Blocker, and Spencer Youngblood, Defendants.**

No. CV 489–254.

United States District Court,
S.D. Georgia,
Savannah Division.

March 18, 1991.

---

Joseph H. Barrow, Beckmann & Pinson, Savannah, Ga., for State Farm Mut. Auto. Ins. Co. plaintiff.

B. Daniel Dubberly, Jr., Glennville, Ga., for Betty B. Blocker and Merriam Kenneth Blocker, defendants.

EDENFIELD, Chief Judge.

## ORDER

At issue in this declaratory judgment are various provisions of an insurance policy. Before the Court are the parties' cross-motions for summary judgment. There are no genuine issues of material fact, and the case is ripe for decision. As a matter of law, the Court holds that State Farm's motion should be GRANTED and the defendant's, DENIED.

## BACKGROUND

The parties do not disagree about many factual matters, only legal questions. Except as noted, the facts recited here are uncontroverted. In September 1988, Mary Ann Stanley, terminally ill with cancer, moved out of the home of her husband, J.H. Stanley. She never again stayed at Mr. Stanley's house. When not hospitalized, she apparently stayed with her mother; her friend, Becky Horn; or defendant Spencer Youngblood. At the end of September, Mr. Stanley filed for divorce in Tattnall County Superior Court. One month later, Mrs. Stanley filed an answer and counterclaim for divorce in that court.

On November 16, Mrs. Stanley was involved in a two-car automobile wreck. At the time, she was driving Spencer Youngblood's car, and Youngblood was a passenger in the vehicle. The occupants of the other vehicle, defendants Betty and Merriam Blocker, were injured in the accident, and each separately sued Mrs. Stanley and Spencer Youngblood in state court. State Farm Mutual Automobile Insurance Company ("State Farm"), with whom Mr. Stanley had an automobile insurance policy, received a demand that it defend Mrs. Stanley. The Blockers' attorney in the state suits notified State Farm that, "should a verdict be returned against the Estate of Mary Ann Stanley, the Blockers would seek to recover from State Farm for the amount of that verdict."[1] State Farm immediately filed this action for a declaratory judgment that, because Mr. Stanley's policy did not cover Mrs. Stanley at the time of her accident, State Farm had no duty to defend or indemnify Mrs. Stanley. In April 1989, Mrs. Stanley died from the terminal illness. Mr. Stanley was appointed temporary administrator of her estate, and in September 1989, he dismissed his divorce action.

## ANALYSIS

### A. At the Threshold: Should the Court Address the Merits?

■ Although neither party has addressed the issue of abstention, the Court, *sua sponte*, addresses the issue and holds that it cannot abstain from deciding the merits of this action. In the usual case, a

---

1. *State Farm Brief in Support of Summary Judgment*, CV 489–254, (S.D.Ga. filed May 11, 1990) at 2.

district court has discretion to decline to entertain a declaratory judgment action on the merits when a pending proceeding in another court may fully resolve the controversy between the parties. *E.g., Ven-Fuel, Inc. v. Department of the Treasury*, 673 F.2d 1194, 1195 (11th Cir.1982). As a general rule, a declaratory judgment action should not be used "to interfere with an action which has already been instituted." *Allied–General Nuclear Servs. v. Commonwealth Edison Co.*, 675 F.2d 610, 611 (4th Cir.1982). Indeed, in cases indistinguishable from this one, most federal courts have held that federal courts should not resolve the merits of the insurer's declaratory judgment action. *E.g., American Home Insurance Co. v. Evans*, 791 F.2d 61, 63–64 (6th Cir.1986); *Employers Ins. of Wausau v. Gulf Island Marine, Inc.*, 718 F.Supp. 17, 18–19 (E.D.La.1989); *Government Employees Ins. Co. v. Sellers*, 667 F.Supp. 850, 852 (S.D.Fla.1987); *Carey v. East Detroit Jaycees, Inc.*, 660 F.Supp. 1577, 1578–79 (E.D.Mich.1987). The Eleventh Circuit, however, recently has decided otherwise. In *Cincinnati Insurance Co. v. Holbrook*, 867 F.2d 1330 (11th Cir.1989), the court held, in a per curiam opinion, that a district court may not abstain in these circumstances. *Id.* at 1333. Although the *Holbrook* court did not cite any of the above-listed cases holding to the contrary, its decision is, of course, binding on this Court. The Court will therefore proceed to the merits.

## B. Summary Judgment

■ Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, an-

swers to interrogatories, and admissions on file, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *see Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir.1990). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out ...—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2554.

It is then the nonmovant's burden to establish, by going beyond the pleadings, that there is a genuine issue as to facts material to the nonmovant's case. *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir.1990); *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1528 (11th Cir.1987). "Factual disputes that are irrelevant or unnecessary will not be counted." *United States v. Gilbert*, 920 F.2d 878, 883 (11th Cir.1991) (citation omitted). The nonmovant "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Liberty Lobby*, 477 U.S. at 257, 106 S.Ct. at 2514; *Gilbert*, 920 F.2d at 882. This evidence must be sufficient to support a jury verdict in the nonmovant's favor. *E.g., United of Omaha Life Ins. Co. v. Sun Life Ins. Co.*, 894 F.2d 1555, 1558 (11th Cir.1990). The nonmovant may do this by "coming forward with sufficient evidence on each element that must be proved," *e.g., Kee v. National Reserve Life Ins. Co.*, 918 F.2d 1538, 1543 (11th Cir.1990) (quoting *Earley*, 907 F.2d at 1080), or pointing to specific facts which contradict essential facts shown by the movant. *Walker v. Darby*, 911 F.2d 1573, 1576 (11th Cir.1990).

■ In assessing whether the movant is entitled to summary judgment in its favor, the district court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmoving party. *E.g., Gilbert*, 920 F.2d at 882; *Hoffman v. Allied Corp.*, 912 F.2d 1379, 1383 (11th Cir.1990). "Where the record, taken as a whole could not lead a rational trier of fact to find for the nonmoving party, then there is no genuine

issue for trial." *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *see Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512; *Barfield v. Brierton*, 883 F.2d 923, 933–34 (11th Cir.1989). The Court, however, must avoid weighing conflicting evidence, *Liberty Lobby*, 477 U.S. at 255, 106 S.Ct. at 2513; *Brown v. Hughes*, 894 F.2d 1533, 1536 (11th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 2624, 110 L.Ed.2d 645 (1990), or making credibility determinations. *Liberty Lobby*, 477 U.S. at 255, 106 S.Ct. at 2513; *McKenzie v. Davenport–Harris Funeral Home*, 834 F.2d 930, 934 (11th Cir.1987).

### C. Interpretation of Insurance Contracts

 Ordinarily, interpretation of contract is a question of law for the Court to resolve. O.C.G.A. § 13-2-1 (1982). A court's primary goal in interpreting an insurance policy is to ascertain the parties' intent. O.C.G.A. § 13-2-3 (1982); *see Fidelity & Deposit Co. v. Sun Life Ins. Co. of Amer.*, 174 Ga.App. 258, 260, 329 S.E.2d 517 (1985); *Purcell v. Allstate Ins. Co.*, 168 Ga.App. 863, 864, 310 S.E.2d 530 (1983). An insurance policy is a contract, and the construing court must therefore view it as a whole, in light of the usual rules of contract construction. *E.g., National Hills Shopping Center, Inc. v. Liberty Mut. Ins. Co.*, 551 F.2d 655, 657 (5th Cir. 1977) (applying Georgia law); *Dixon v. Midland Ins. Co.*, 168 Ga.App. 319, 322, 309 S.E.2d 147 (1983). This Court has recently explained that Georgia courts use a three-step test to determine the parties' intent. *See Dickens v. Principle Mut. Life Ins. Co.*, No. CV 487–130, slip op. at 4, 1987 WL 109904 (S.D.Ga. Nov. 18, 1987) (available on Lexis); *see also United of Omaha*, 894 F.2d at 1564. First, a court must "decide whether the contract language is ambiguous; if it is, then [the court must] apply the applicable rules of construction; and if an ambiguity still remains, the jury may resolve it." *United States Fire Ins. Co. v. Cowley & Assoc.*, 183 Ga.App. 478, 479, 359 S.E.2d 160 (1987); *see Copy Sys. of Savannah, Inc. v. Page*, 197 Ga.App.

435, 436, 398 S.E.2d 784 (1990); *United of Omaha*, 894 F.2d at 1564; *Dickens*, slip op. at 4. Thus, before submitting an insurance contract to the jury for construction, a court first should attempt to construe it as a matter of law. *E.g., Travelers Ins. Co. v. Blakey*, 255 Ga. 699, 700, 342 S.E.2d 308 (1986). Even if an insurance policy appears ambiguous, the courts must try to interpret it by applying the pertinent canons of contract construction. If applying those canons does not clarify the ambiguity, only then is a jury question presented. *E.g., Guest v. Horace Mann Ins. Co.*, 168 Ga. App. 714, 715, 310 S.E.2d 241 (1983); *Alley v. Great American Ins. Co.*, 160 Ga.App. 597, 599, 287 S.E.2d 613 (1981).

 Several canons of contract construction apply in this case. A court must first look to the plain and literal meaning of the contractual language. *E.g., Monarch Ins. Co. v. Polytech Indus., Inc.*, 655 F.Supp. 1058, 1063 (M.D.Ga.), *aff'd mem.*, 833 F.2d 1020 (11th Cir.1987). In so doing, however, courts cannot view portions of the contract or policy in isolation. Rather, the contract or policy must be read as a whole. *E.g., Hercules Bumpers, Inc. v. First State Ins. Co.*, 863 F.2d 839, 841 (11th Cir.1989) (applying Georgia law); *Big Bear Ranches, Inc. v. Georgia Farm Bureau Mut. Ins. Co.*, 169 Ga.App. 307, 308, 312 S.E.2d 378 (1983). Courts must avoid constructions that do not give effect to all portions of the policy. *E.g., Big Bear Ranches*, 169 Ga.App. at 310, 312 S.E.2d 378. Instead, courts must try to harmonize all provisions in the policy. *Hercules Bumpers*, 863 F.2d at 841. Further, "[a]ny ambiguity must be construed strictly against the insurer." *Id.; see Claussen v. Aetna Cas. & Surety Co.*, 259 Ga. 333, 334–35, 380 S.E.2d 686 (1989). That a different interpretation of a policy's language is conceivable does not automatically prove the existence of an "ambiguity" of the kind requiring that the language be construed against the drafter, or requiring determinations by a jury. *Monarch Ins. Co.*, 655 F.Supp. at 1063. Courts must not creatively interpret contracts, but must ascribe to a contract's language its plain and ordinary

meaning, reading the policy "as a layman would read it and not as might be analyzed by an insurance expert or an attorney." *Macon Light House Revival Center v. Continental Ins. Co.*, 651 F.Supp. 417, 420 (M.D.Ga.1987). Armed with these principles, the Court will turn to the present dispute.

### D. Was Mrs. Stanley a "Covered Spouse?"

State Farm says that Mrs. Stanley was not an insured under the policy when she was involved in the accident because she was not "living with" Mr. Stanley at that time. The policy contains two sections relevant to this contention. On page 4, the policy states, in a section entitled "DEFINED WORDS WHICH ARE USED IN SEVERAL PARTS OF THIS POLICY": "*Spouse*—means a husband or wife while living with *you*."[2] A later subsection, contained in a section entitled "CONDITIONS," says:

8. Extended Coverage for Spouse.

If *your car* is a *private passenger car*, upon notice to us of:

. . . . .

b. the termination of *your* marriage relationship, we will continue for *your spouse* any coverage under this policy that applies to *your spouse* immediately prior to such termination for:

(1) 90 days from the termination of *your marriage* relationship.[3]

State Farm concedes that, if Mrs. Stanley met the definition of "spouse" quoted above, then she would be covered by the terms of the policy.[4] State Farm argues, however, that, because Mrs. Stanley was not "living with" Mr. Stanley at the time of the accident, she was not a "spouse" within the meaning of the policy. This argument has an alluring, but deceptive, simplicity. If the section entitled "Extended Coverage for Spouse" did not exist, the Court likely would agree with State Farm. Unfortunately for State Farm, however, the Court must read the definition of "spouse" in

harmony with the section entitled "Extended Coverage for Spouse." *See Hercules Bumpers*, 863 F.2d at 841; *Big Bear Ranches*, 169 Ga.App. at 308, 310, 312 S.E.2d 378. Looking at the plain language of the two provisions, the Court discerns two possible readings that give effect to both provisions.

One reading is that the section entitled "Extended Coverage for Spouse" is subject strictly to the definition of "spouse" in the beginning of the policy. Thus, the "Extended Coverage" section only applies in situations where the "spouse" is still living with the insured. The Court must read the provisions as would a *reasonable* layman, *e.g.*, *Macon Light House*, 651 F.Supp. at 420; *Gulf Ins. Co. v. Mathis*, 183 Ga.App. 323, 324, 358 S.E.2d 850 (1987), and this reading does not comport with reality. No reasonable person would think that the later provision applied only if, *after* termination of the marriage relationship, the spouse still "lived with" the insured. Even though that reading is harmonious, it is not reasonable.

 Another way to read the two sections in harmony is to view the definitional section as a broader section, and the "Extended Coverage" section as a more limited or specific provision. In other words, in general, a spouse must be "living with" the insured in order to be covered. If, however, the marriage relationship ends, the insured's ex-spouse will be covered for an *additional* 90 days if the insurer is given notice of the termination of the marriage relationship, even if the ex-spouse moves out. Thus, the "Extended Coverage" section is an exception to the broader definitional section. This reading comports with the canon of construction that "[a] limited or specific provision of a contract will prevail over one that is more broadly inclusive." *E.g.*, *Holtzclaw v. City of Dalton*, 189 Ga.App. 650, 652, 377 S.E.2d 196 (1988) (citation omitted); *see Auto–Owners Ins. Co. v. Barnes*, 188 Ga.App. 439, 441, 373 S.E.2d 217 (1988). Moreover, this read-

**2.** *Exhibit C* to *State Farm's Motion*, at p. 4.

**3.** *Id.* at p. 27.

**4.** *State Farm Brief* at p. 3.

ing is reasonable. To read the two sections this way comports with reality: when marriages break up, one or both spouses must "start again" in a manner of speaking. It is reasonable to interpret the policy language in question to allow a 90–day grace period for this transition. Applying the "reasonable layman's reading" and "specific/broad" canons, the Court concludes that, if the ninety-day extension provision was in effect, then Mrs. Stanley was covered.

██ Alternatively, the Court could resolve this issue by applying the canon: "[I]f an insurance contract is capable of being construed two ways, it will be construed against the insurance company and in favor of the insured." *Claussen,* 259 Ga. at 333, 334–35, 380 S.E.2d 686 (citation omitted). Applying this rule of construction, again the Court reaches the conclusion that Mrs. Stanley, at the time of the accident, was a covered spouse if the 90–day extension was in effect.

To determine whether the 90–day extension applies in this case, the Court enlists the aid of undisputed facts. The accident occurred less than 90 days after Mrs. Stanley moved out of the Stanley home. The "Extended Coverage for Spouse" provision of the policy states that, "upon notice to [State Farm] ... of the termination of your marriage relationship, [State Farm] ... *will* continue for your spouse any coverage under this policy that applies to your spouse immediately prior to the termination for ... 90 days."[5] State Farm argues, however, that this provision does not apply because when Mrs. Stanley moved out, Mr. Stanley told his State Farm agents to take Mrs. Stanley *off* the policy.[6] State Farm directs the Court's attention to the deposition of Mr. Stanley:

Q[uestion]: Okay. When did you first tell State Farm about the accident? Did you report it immediately to your—under your insurance policy?

A[nswer]: Well, about her accident?

Q: Yeah.

A. I don't know if I did or not.

Q: Is that because you didn't think it applied to her?

A: Well, *I didn't think that she'd be covered since I done went there and told them she left me[,] to take her off.* I might have went by and told Mary or Charlotte, but I don't remember.

Q: Those are the girls in the State Farm office?

A: Yeah. Only thing I went up there to do and told them to take her off because we was getting divorced.[7]

The Blockers do not contest this evidence. It is therefore undisputed that State Farm did receive notice that the Stanleys' marriage was terminated or in the process of terminating. Notice is all the "Extended Coverage for Spouse" section requires. State Farm's argument that that section does not apply because Stanley told the agents to "take her off" is irrelevant. The plain language of the section does not require notice *and* a request to extend coverage; it merely requires notice. The language of the section is unambiguous in this regard, and even if it was not, several canons of policy interpretation favor coverage of Mrs. Stanley. First, this section must be construed strictly against the insurer. Second, Mr. Stanley contracted for this provision *when he purchased the policy.* His feelings about it *after Mrs. Stanley left him* are irrelevant. The Court must focus on the parties' intentions at the time of execution of the policy, *see Gans v. Georgia Fed. Sav. & Loan Ass'n,* 179 Ga. App. 660, 662, 347 S.E.2d 615 (1986), not what Mr. Stanley wanted when his wife left. The Court understands that this result is probably displeasing *now* to both parties to the policy, but it is clear that they intended for this provision to operate in this way when they executed the policy. Third, "[w]hile insurance is a matter of contract, not sympathy, the policy is to be

---

**5.** *Exhibit C* to *State Farm's Motion,* at p. 27 (emphasis added).

**6.** *State Farm's Response to Defendant's Motion for Summary Judgment,* at p. 2.

**7.** *J.H. Stanley Deposition,* at p. 22 (emphasis added).

construed liberally in favor of the object to be accomplished." *Cincinnati Ins. Co. v. Gwinnett Furniture Mart, Inc.*, 138 Ga. App. 444, 446, 226 S.E.2d 283 (1976) (citations omitted).

Under the terms of the policy, Mrs. Stanley was eligible for the coverage offered in the "Extended Benefits for Spouses" section. Because Mr. Stanley indisputably met the simple notice requirement of that section, Mrs. Stanley is covered under that section. The Court will now turn to State Farm's argument that the delay between the time of the accident and lawsuits and the time that it received notice of the accident and the lawsuits, excuses State Farm from its duty to defend Mrs. Stanley and pay under the policy.

### E. Delay and Prejudice

■ Mr. Stanley's policy with State Farm contained a section entitled "REPORTING A CLAIM—INSURED'S DUTIES." Subsection one and two of that section state:

1. **Notice to Us of an Accident or Loss.**
 The *insured* must give us or one of our agents written notice of the accident or *loss* as soon as reasonably possible.

 . . . . .

2. **Notice to Us of Claim or Suit.**
 If a claim or suit is made against an *insured*, that *insured* must at once send us every demand, notice or claim made and every summons or legal process received.[8]

The Blockers do not specifically deny that State Farm first received written notice of the accident and the suit on September 13, 1989, ten months after the accident occurred, eight months after the suits were brought, and five months after Mary Ann Stanley died. This action, however, involves a dispute not between the insured and the insurer, but between an injured third-party (the Blockers) and the insurer. Recently, the Georgia Court of Appeals stated: "Concerning third parties, lack of notice of *accident* is not a viable defense

available to an insurer, and considerations of excusable delay or prejudice are immaterial." *Ginn v. State Farm Mut. Automobile Ins. Co.*, 196 Ga.App. 640, 642, 396 S.E.2d 582 (1990) (emphasis added) (overruling *Rucker v. Allstate Ins. Co.*, 194 Ga.App. 407, 390 S.E.2d 642 (1990)). Thus, State Farm cannot raise, as a defense in the state court actions, or as a basis for relief here, that it did not receive timely notice of the accident. Its argument concerning timely notice of the lawsuits is a different matter, however.

■ Untimely notice to the insurer of lawsuits may relieve the insurer of its duty to defend and pay if the delay is unreasonable and the insurer is prejudiced by the delay. The Georgia Code provides:

> Cooperation by insured with insurer in connection with defense of action or threatened action under policy.
>
> (a) No motor vehicle liability insurance policy ... shall be issued ... unless such policy contains provisions ... which specifically requires the insured to send his insurer, as soon as practicable after receipt of notice thereof, a copy of every summons or other process relating to the coverage under the policy and to cooperate otherwise with the insurer in connection with the defense of any action or threatened action covered under the policy.
>
> (b) Noncompliance by the insured with this required provision ... shall constitute a breach of the insurance contract which, if prejudicial to the insurer, shall relieve the insurer of its obligation to defend its insured under the policy and of any liability to pay under the policy and of any liability to pay any judgment or other sum on behalf of the insured.

O.C.G.A. § 33-7-15 (Supp.1990). The insurer bears the burden of showing both unreasonable delay and prejudice. *Champion v. Southern Gen. Ins. Co.*, 198 Ga. App. 129, 130, 401 S.E.2d 36 (1990). In the usual case, adequacy of notice is a question for the trier of fact. *E.g., Hamm v. Ledesma*, 184 Ga.App. 237, 237–38, 361 S.E.2d 205 (1987). This, however, is not a typical

---

8. *Exhibit C* to *State Farm's Motion,* at p. 5.

case. As mentioned earlier, State Farm has pointed out that it did not receive notice of the lawsuits until over eight months after the suits began. The defendants have offered no excuse or justification for this delay. Accordingly, the Court easily concludes that, under these circumstances, the eight-month delay in giving notice of the lawsuit was unreasonable as a matter of law. *See, e.g., Paris v. State Farm Mut. Automobile Ins. Co.*, 391 F.2d 595, 596 (5th Cir.1968) (two-month delay unreasonable under Georgia law); *Insurance Co. of North Amer. v. Waldroup*, 462 F.Supp. 161, 163 (M.D.Ga.1978) (notice of accident—two-year delay unreasonable under Georgia law); *Caldwell v. State Farm Fire Ins. Co.*, 192 Ga.App. 419, 421, 385 S.E.2d 97 (1989) (six-month delay unreasonable); *Richmond v. Georgia Farm Bureau Mut. Ins. Co.*, 140 Ga.App. 215, 216, 222, 231 S.E.2d 245 (1976) (notice of accident—eight-month delay unreasonable). The Blockers nevertheless argue that State Farm *must* have received some form of notice. They explain that the law firm that defended the prior lawsuit on behalf of Spencer Youngblood through his insurance carrier, Pinnacle Insurance Company, is not only the same that represents State Farm here, but also the same firm that has represented State Farm in several other cases. Despite possessing no evidence to support their argument, the Blockers insist that the law firm must have notified State Farm. There are two reasons that the Court cannot accept this argument. First, section 33–7–15(b) does not simply require that the insurer be notified, but the plain language of the section requires that the *insured* notify the insurer: *"Noncompliance by the insured* with this required provision shall constitute a breach...." *Id.* (emphasis added). Thus, whether the law firm may have notified State Farm is immaterial to the statute's requirement, although it may be relevant to prejudice. Second, by presenting no evidence in support of this contention, the Blockers have not met their burden "to establish, by going beyond the pleadings, that there is a genuine issue" about whether State Farm was given timely notice. *See Earley*, 907 F.2d at 1080.

Having determined that notice was deficient, the Court must now determine whether State Farm was prejudiced by the untimely notice.

There are few Georgia cases that address the prejudice requirement in analogous contexts. One venerable case, *Caldwell v. Life & Cas. Ins. Co.*, 38 Ga.App. 589, 144 S.E. 678 (1928), suggests that one consideration in determining prejudice is whether the insurer was able adequately to investigate the claim, or whether its ability to do so was diminished significantly. *See id.* at 590, 144 S.E. 678. Indeed, Georgia Courts and several courts around the country have acknowledged that the primary purpose of insurance policy notice requirements is to give the insurer an opportunity to make a timely and adequate investigation of all the circumstances. *Champion*, 198 Ga.App. at 131, 401 S.E.2d 36; *Hamm*, 184 Ga.App. at 238, 361 S.E.2d 205; *see, e.g., Aetna Cas. & Surety Co. v. Murphy*, 206 Conn. 409, 538 A.2d 219, 223 (1988); *see also Darcy v. Hartford Ins. Co.*, 407 Mass. 481, 486, 554 N.E.2d 28, 31–33 (1990); *Molyneaux v. Molyneaux*, 230 N.J.Super. 169, 553 A.2d 49, 52 (1989); *Milwaukee Guardian Ins., Inc. v. Reichhart*, 479 N.E.2d 1340, 1342 (Ind.App.1985). Consequently, most of these courts have held that, where, as a result of delayed notification, an insurer's ability to investigate a claim has been "materially prejudiced," *Murphy*, 206 Conn. 409, 538 A.2d at 224, or "actually harmed," *Darcy*, 407 Mass. at 486, 554 N.E.2d at 31–32, the insurer should be relieved of its duty to defend and pay. Some courts have gone so far as to *presume* prejudice from an unreasonable delay in notice. *See Reichhart*, 479 N.E.2d at 1342; *see also Murphy*, 206 Conn. 409, 538 A.2d at 224 (listing cases). Still other courts have imposed the stringent requirement that the insurer produce some evidence suggesting that some party other than the insured was the negligent actor. *E.g., Dairyland Ins. Co. v. Clementson*, 431 N.W.2d 895, 897 (Minn.App.1988). This Court believes that Georgia would take the middle ground, as have the majority of other states, and require a showing of material prejudice.

The Court must therefore determine whether State Farm has shown that it has suffered material prejudice. *See generally Champion,* 198 Ga.App. at 131, 401 S.E.2d 36. One factor relevant to this inquiry is whether the delay has caused the loss of critical testimony. *Darcy,* 407 Mass. at 486, 554 N.E.2d at 31–32. State Farm says that is precisely what has happened here. The defendant in the Blockers' state court suits is Mary Ann Stanley's estate. Naturally, State Farm would like to interview Mrs. Stanley, its insured and the driver of the Youngblood car. The eight-month delay has made that interview impossible because of Mrs. Stanley's intervening death in April 1989. State Farm's inability to interview this critical witness has diminished State Farm's ability to investigate the claim. This diminished ability to investigate the claim shows that the untimely notice materially prejudiced State Farm.

Citing *Champion,* the Blockers argue that, because State Farm's opportunity to investigate and defend this action was not *totally* destroyed, State Farm cannot show prejudice. *Champion,* however, does not support this argument. In that case, by the time the insurer received notice of the lawsuit, the trial court had entered a default judgment against the insured. *Champion,* 198 Ga.App. at 129–30, 401 S.E.2d 36. As a result, the Court of Appeals noted, the insurer

> was deprived of all opportunity to engage in discovery, present evidence and cross-examine appellant's witnesses at trial, and negotiate a prejudgment settlement of appellant's claims against its insured. Under similar circumstances other courts have held that where the insurer has been deprived of all opportunity to defend, the mere entry of the adverse judgment is affirmative evidence of actual prejudice to the insurer.

*Id.* at 130, 401 S.E.2d 36 (citations omitted). Thus, *Champion* stands for the proposition that the entry of a default judgment against the insured before notice is given is *per se* proof of prejudice. That holding does not *require* that a default judgment

have been entered against the insured before an insurer can show prejudice.

The Blockers also chime in with their now familiar refrain that, because the suit was ably investigated by Pinnacle Insurance's law firm, the firm that represents State Farm here, State Farm has not been prejudiced. For two reasons, the Court cannot accept that argument. First, State Farm was entitled to orchestrate *its own* investigation. That right is not satisfied simply because Pinnacle directed an investigation satisfactory to Pinnacle. Notice to Pinnacle is not the same thing as notice to State Farm. Second, as State Farm points out, to assume that the law firm must have notified State Farm is to assume that the firm may have breached its duty to keep inviolate the confidences of its clients. The Court is unwilling, in the absence of any evidence on this point, to assume that this happened.

In sum, the Blockers have adduced no evidence at all that controverts State Farm's showing that it was prejudiced by the late notice. They simply insist that State Farm was not. Arguments in briefs, however, are not the "affirmative evidence" that the Blockers need to present to meet their burden on summary judgment to rebut State Farm's initial showing that it was prejudiced. *See, e.g., Helmich v. Kennedy,* 796 F.2d 1441, 1443 (11th Cir.1986); *Transurface Carriers, Inc. v. Ford Motor Co.,* 738 F.2d 42, 46 (1st Cir.1984); *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co.,* 690 F.2d 1235, 1238 (9th Cir.1982).

## CONCLUSION

The Court has before it sufficient uncontroverted evidence to resolve this case on summary judgment. Applying settled canons of construction, the Court holds that Mrs. Stanley was eligible for the 90-day extension of coverage provided for in the policy's "Extended Benefits for Spouse" section. Because, however, the Stanleys' unreasonable delay in giving State Farm notice of the lawsuits arising out of the collision has materially prejudiced State Farm, the Court holds that State Farm is

relieved of its duty to defend Mrs. Stanley in these suits. For the same reason, The Court holds that State Farm is relieved of its duty to pay any judgment arising out of the collision against Mrs. Stanley's estate. Accordingly, the Court hereby ADJUDGES and DECLARES that:

(1) Mary Ann Stanley and J.H. Stanley, as the Temporary Administrator of the Estate of Mary Ann Stanley, deceased, are not entitled to any coverage benefits under the policy of insurance issued to J.H. Stanley by State Farm with regard to any and all claims, defense, or indemnification arising out of the accident occurring on November 16, 1988; and

(2) None of the defendants are entitled to any coverage benefits in payment or satisfaction of any claim or judgment which defendants Merriam Kenneth Blocker or Betty B. Blocker may recover from Mary Ann Stanley or J.H. Stanley as Temporary Administrator of the Estate of Mary Ann Stanley, deceased, in civil actions numbers 89-V-25 and 89-V-26 pending in Superior Court of Tattnall County, Georgia.

SO ORDERED.