407 Mass. 481 (1990)
554 N.E.2d 28
LILLIAN DARCY & another[1]
vs.
THE HARTFORD INSURANCE COMPANY & another;[2] ROYAL GLOBE INSURANCE COMPANY, third-party defendant.
Supreme Judicial Court of Massachusetts, Suffolk.
March 8, 1990.
May 22, 1990.
Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.
*482 Roger A. Emanuelson (William P. Smith with him) for Royal Globe Insurance Company.
Joseph G. Abromovitz for the plaintiffs.
Peter C. Kober, for The Hartford Insurance Company, was present but did not argue.
GREANEY, J.
After trial, a judge in the Superior Court concluded that Lillian Darcy and Mary Iglesias (plaintiffs), and third-party plaintiff, The Hartford Insurance Company (Hartford), could recover the proceeds of a liability insurance policy issued by Royal Globe Insurance Company (Royal Globe). Royal Globe has appealed, claiming that the delay in notice of the plaintiffs' claims, and the failure of its insured to cooperate, permitted Royal Globe to disclaim coverage under the policy. We transferred the appeal to this court on our own motion. We agree with the judge that Royal Globe may not avoid coverage on either of its stated grounds. Consequently, we affirm the judgment of the Superior Court.
The facts found by the judge are as follows. In 1979, Aladdin Building Maintenance Company (Aladdin) was awarded a contract to provide janitorial services for the John F. Kennedy Federal Building in Boston. Aladdin subsequently entered into a subcontract assigning those duties to United Building Maintenance, Inc. (United). At all relevant times, Aladdin carried a comprehensive commercial liability insurance policy with personal injury coverage issued by Hartford, while United carried a similar policy issued by Royal Globe. On September 15, 1979, the plaintiffs were working in the Federal building at their desks, which were separated by a free-standing room partition or baffle. The baffle was accidentally knocked over by a United employee who was attempting to clean around it, and it fell on the plaintiffs, injuring them both severely.
The plaintiffs brought suit against United in the Superior Court on February 18, 1981, seeking damages for their personal injuries. United never filed an appearance, nor did it notify its insurer, Royal Globe, of either the accident or the lawsuit. On August 15, 1981, the plaintiffs filed suit against *483 Aladdin, the main contractor, in the United States District Court for Massachusetts. This action was concluded on September 23, 1983, when the plaintiffs won judgments for $582,080.12, and $82,055.35, respectively.
On November 4, 1983, the plaintiffs sought to satisfy their Federal court judgments by suing Hartford in the Superior Court to reach and apply the proceeds of the Hartford policy issued to Aladdin. Hartford responded by filing a third-party complaint against Royal Globe, seeking recovery from Royal Globe as the liability insurer of United, Aladdin's subcontractor. Hartford's complaint, filed on January 8, 1985, reached Royal Globe nine days later, on January 17, 1985. This was the first notice Royal Globe had received of the accident, which had occurred on September 15, 1979.
At the time Royal Globe received notice of the plaintiffs' claims against its insured, the underlying tort action against United in the Superior Court had not been resolved. Accordingly, Royal Globe undertook an investigation of the claim. The claims adjuster assigned to the case examined Royal Globe's records and discovered reference to a previous claim involving United. The records indicated that United had not responded to Royal Globe's correspondence in that case. The claims adjuster thus assumed that any attempt to make contact with United's principals directly would be futile, and he hired an investigation bureau to locate them.
As found by the judge, the investigation authorized by Royal Globe was limited to the following efforts: An investigator was assigned to locate United's principals. To this end, the investigator examined the telephone directory and various public records, and wrote to the attorney listed on United's articles of incorporation. The investigator eventually located one Pasquale Verro, who was named as a principal of United. However, upon reaching this man, the investigator discovered that he was not the Pasquale Verro associated with United, but was a relative. The investigation went no further. The Royal Globe claims adjuster responded to this information by sending a letter to the Pasquale Verro located by the investigator, despite actual knowledge that this was *484 not the right man, informing him that Royal Globe was disclaiming coverage due to lack of notice and cooperation from United. Subsequently, on August 14, 1987, and October 19, 1987, respectively, default judgments entered against United in the pending State court actions. More than two years had elapsed between Royal Globe's first notice of the claim (January 8, 1985) and the eventual entry of the default judgments against United, Royal Globe's insured.
On October 19, 1987, Hartford and the plaintiffs entered into a settlement agreement pursuant to which the plaintiffs agreed to dismiss their claims against Hartford with prejudice in consideration of a $300,000 payment. The plaintiffs, in the meantime, had brought claims directly against Royal Globe. Hartford and the plaintiffs further agreed to pursue their respective claims against Royal Globe, and stipulated that any recovery on those claims would be divided equally between them.
A trial ensued on the issue whether the plaintiffs and Hartford could reach and recover the proceeds of Royal Globe's policy with United. Royal Globe defended on the basis that it had properly disclaimed coverage because United, its insured, had violated its policy obligations to provide seasonable notice of the claims and to cooperate in the defense thereof. The judge rejected both claims. Relying upon G.L.c. 175, § 112, and our decision in Johnson Controls, Inc. v. Bowes, 381 Mass. 278 (1980), the judge concluded that Royal Globe had not carried its burden of proving that the delay in giving notice had materially prejudiced its interests. Further, the judge determined that Royal Globe had not fulfilled its duty to exercise diligence and make a good faith effort to obtain United's cooperation. See Allen v. Atlantic Nat'l Ins. Co., 350 Mass. 181 (1966). Accordingly, the judge concluded that neither breach entitled Royal Globe to disclaim liability, and entered a judgment against Royal Globe (divided between the plaintiffs and Hartford) in the total amount of $300,000.
1. The duty to provide seasonable notice. The Royal Globe policy issued to United contains the notice provision *485 set forth below.[3] As Royal Globe concedes, breach of that provision by an insured is not an independently sufficient basis for an insurer to disclaim liability. Rather, the insurer must prove that its interests have been prejudiced by the insured's failure to provide timely notice of the accident. See G.L.c. 175, § 112, as amended by St. 1977, c. 437 ("An insurance company shall not deny insurance coverage to an insured because of failure of an insured to seasonably notify an insurance company of an occurrence, incident, claim or of a suit founded upon an occurrence, incident or claim, which may give rise to liability insured against unless the insurance company has been prejudiced thereby."); Johnson Controls, Inc. v. Bowes, supra at 282 (insurer bears the burden of proving prejudice).[4] See also MacInnis v. Aetna Life & Casualty Co., 403 Mass. 220, 223 (1988).
Royal Globe urges that we adopt a rebuttable presumption of prejudice in cases where the delay in notifying an insurer of a claim or possible claim is "extreme." Such a rule, Royal Globe contends, "makes sense in light of the legitimate purposes served by the notice provisions and fairly balances the competing interests of the insurer, insured and third parties." Were we to adopt such a rule, argues Royal Globe, we should find (contrary to the judge) that the more than five-year delay in notifying Royal Globe in this case was "extreme," and thus entitles Royal Globe to the benefit of the presumption. We decline Royal Globe's request to modify existing law in this area.
*486 Adopting the presumption Royal Globe seeks would, in effect, constitute a retreat to a mode of interpretation of insurance policies which invites technical forfeitures, and would conflict sharply with the view, previously expressed by both the Legislature and this court, that forfeitures should occur only upon a showing of actual prejudice to an insurer's interests. See G.L.c. 175, § 112 (1988 ed.); Johnson Controls, Inc. v. Bowes, supra. By its very nature, a presumption, in cases in which it applied, would tend to relieve an insurer of its burden to demonstrate actual harm to its interests. Such a rule could permit an insurer to avoid liability on the basis of the possibility, rather than on proof of actual prejudice. The proposed rule would tend to shift unfairly the burden of showing prejudice from the party in the best position, and with the most resources, to ascertain the existence of prejudice to the party who is least capable of investigating the likelihood that a claim, despite a delay in notice, can be adequately defended. In the process, the protections for which insurance was obtained and paid for, could be denied. Additionally, the Legislature's concern that an insurer attempting to disclaim coverage for lack of notice must show prejudice would be frustrated contrary to the directive of G.L.c. 175, § 112.
The length of delay, of course, in notice will always be a relevant factor to be considered in determining whether actual prejudice has been shown by an insurer, and the longer the delay, the more likely that prejudice exists. But, before a denial of coverage by an insurer is justified, the delay in notice must be accompanied by a showing of some other facts or circumstances (such as, for example, the loss of critical evidence, or testimony from material witnesses despite diligent good faith efforts on the part of the insurer to locate them) which demonstrates that the insurer's interests have been actually harmed. See Thompson v. Grange Ins. Ass'n, 34 Wash. App. 151, 163-164 (1983) (refusing to presume prejudice because of five-year delay in notice and requiring a showing of actual prejudice). We see no reason to absolve the *487 insurer of the burden of identifying the precise manner in which its interests have suffered.
Royal Globe next contends that, even without the benefit of a presumption, it has demonstrated actual prejudice to its interests in this case by showing that it has been "placed in a substantially less favorable position than it would have been in had timely notice been provided." In support of his conclusion that actual prejudice had not been demonstrated, the judge relied primarily on the fact that Royal Globe learned of the claim against its insured more than two years before the default judgment entered. The judge also found that the accident had occurred less than one block from Royal Globe's offices, and that it was likely to have generated considerable documentation, including reports in connection with workers' compensation claims and Department of Labor records. Further, the judge found that Royal Globe would have had access to the documents compiled for the plaintiffs' Federal court suit against Aladdin, which was based on the same accident. The judge noted that Royal Globe made no meaningful attempt to identify employees of United, or to locate eyewitnesses to the accident. Royal Globe's efforts boil down to a torpid effort at finding United's principal without any corresponding effort to investigate the incident itself. Thus, the judge concluded that Royal Globe had "sufficient opportunity to investigate the circumstances surrounding the plaintiffs' injuries," even after its receipt of admittedly unseasonable notice; and, consequently, Royal Globe had not demonstrated at all that it had been placed in a substantially less favorable position than it would have been had it received earlier notice. Because this conclusion is amply supported by the evidence, we decline to disturb it on appeal.[5]
*488 2. The duty to cooperate. The Royal Globe policy contains a provision obligating United to cooperate in the event of a lawsuit, including the duties of attending hearings and trials and assisting in the procurement of relevant evidence and witnesses. Royal Globe asserts that United's failure to cooperate justifies a denial of liability under the policy's terms. The plaintiffs, on the other hand, suggest that we extend the prejudice requirement, which we previously have applied in other insurance policy contexts, to the lack of cooperation context as well. If we make this extension, plaintiffs argue, Royal Globe cannot disclaim liability due to lack of cooperation because, as has been decided above, Royal Globe has not demonstrated that its interests have suffered actual prejudice.
Under current law, breach of the duty to cooperate on the part of an insured must be "substantial and material" before it permits an insurer to disclaim liability. See Morrison v. Lewis, 351 Mass. 386, 390 (1966). See also 14 G. Couch, Insurance, § 51.107, at 607 (2d ed. 1982). A showing of prejudice on the part of the insurer has not previously been expressly required. See Imperiali v. Pica, 338 Mass. 494, 498 (1959); Polito v. Galluzzo, 337 Mass. 360, 364-365 (1958). The vast majority of jurisdictions which have considered the issue have decided that actual prejudice to an insurer's interests due to lack of an insured's cooperation must be demonstrated before a denial of coverage will be permitted, *489 and we conclude that that should be the rule here as well.[6]
We have previously modified the common law in this area by adding prejudice requirements in the contexts of notice provisions, see Johnson Controls, Inc. v. Bowes, 381 Mass. 278 (1980), and consent-to-settlement provisions, see MacInnis v. Aetna Life & Casualty Co., 403 Mass. 220 (1988). Our rationale in both of those cases stemmed from a rejection of the strict contractual view of insurance policy interpretation, under which the failure of any policy provision, characterized as a condition precedent, automatically relieved an insurer of any obligation to pay on the policy. See, e.g., Rose v. Regan, 344 Mass. 223 (1962). In Johnson Controls, Inc. v. Bowes, supra, we expressed the view that this approach was no longer persuasive because it "`fails to recognize the true nature of the relationship between insurance companies and their insureds. An insurance contract is not a negotiated agreement; rather its conditions are by and large *490 dictated by the insurance company to the insured. The only aspect of the contract over which the insured can `bargain' is the monetary amount of coverage.'" Id. at 281, quoting Brakeman v. Potomac Ins. Co., 472 Pa. 66, 72 (1977).
The better approach, we decided, was to determine whether the insured's breach of a policy requirement frustrated the underlying purpose of that requirement. Only in cases in which that question was answered affirmatively would an insurer be permitted to disclaim coverage. Both notice and consent-to-settlement provisions, we reasoned, exist to enable the insurer to protect its interests. See Johnson Controls, Inc. v. Bowes, supra at 281-282; MacInnis v. Aetna Life & Casualty Co., supra at 223. Accordingly, we held in those decisions that an insurer would be able to disclaim coverage because of an insured's breach of the notice or consent-to-settlement provisions in a policy only if the insurer could prove that any such breach actually prejudiced its position. Johnson Controls, Inc. v. Bowes, supra at 282;[7]MacInnis v. Aetna Life & Casualty Co., supra at 223.
The foregoing reasoning applies with equal force to cooperation provisions. Like notice and consent-to-settlement clauses, cooperation clauses are designed primarily to protect the insurer's interest in avoiding payment on claims which it cannot adequately defend. When that interest has not been jeopardized by the insured's breach, in the sense that the insured's infraction does not seriously impair the insurer's investigation or defense of the action, there is no persuasive reason to permit the insurer to deny coverage under the policy. We now join the considerable authority throughout the country, see note 5, supra, which requires a showing of prejudice by the insurer. We do so "to afford to affected members of the public  frequently innocent third persons  the maximum protection possible consonant with fairness to the insurer." Oregon Auto. Ins. Co. v. Salzberg, 85 Wash. *491 2d 372, 376-377 (1975). We hold that an insurer seeking to disclaim liability on the grounds of an insured's breach of a cooperation provision may do so only upon making an affirmative showing of actual prejudice resulting from that breach. However, because our holding constitutes a "drastic or radical incursion upon existing law," which could disturb preexisting contractual arrangements of the insurer and the insured, we limit its application to claims arising after the date of this opinion. Diaz v. Eli Lilly & Co., 364 Mass. 153, 167 (1973).[8]
In resolving the cooperation issue in this case, we rely, as did the judge, on the rule that an insurer may not disclaim liability due to lack of cooperation unless it has exercised "diligence and good faith" in obtaining that cooperation. Imperiali v. Pica, supra at 498-499. See DiMarzo v. American Mut. Ins. Co., 389 Mass. 85, 100 (1983); Peters v. Saulinier, 351 Mass. 609, 613-614 (1967). The judge concluded, as we have noted above, that Royal Globe's efforts to locate United's principals were inadequate, and that no effort at all was made to investigate the circumstances attending the accident, despite nearby sources that might have disclosed useful information. This conclusion is amply supported by the facts found by the judge, and is not clearly erroneous as matter of law.[9] Accordingly, the judge correctly concluded that Royal Globe may not disclaim liability in this case due to *492 United's failure to cooperate in the defense of the plaintiff's underlying tort action.
Judgment affirmed.
NOTES
[1] Mary Iglesias.
[2] Aladdin Building Maintenance, Inc.
[3] "In the event of an occurrence, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the insured to the company or any of its authorized agents as soon as practicable."
[4] While the assignment of the burden of proof in the Johnson Controls case was made in connection with a legal malpractice insurance policy not covered by the statutory prejudice requirement of G.L.c. 175, § 112, the holding of the case applies to other types of policies such as the comprehensive commercial liability policy at issue here.
[5] Most of the contrary arguments Royal Globe raises in its brief do not rise beyond the level of speculation. For example, Royal Globe claims that the "memories of any witnesses who might continue to be available can hardly be said to be fresh," that "it is reasonable to assume" that United's principals "may have had" valuable information, and that potential claims against third parties "would likely have been barred" by some unspecified statute of limitations. Royal Globe further claims prejudice resulting from the default judgment entered against United more than two years after Royal Globe received notice of the claim. The argument that Royal Globe was "powerless" to prevent the entry of the default judgment because it could not have drafted a responsive pleading in the case is specious. As the judge found, Royal Globe had ample time and opportunity to uncover sufficient facts to file a pleading which could have responded to the merits of the action. Had Royal Globe actually been unable to ascertain such facts, prejudice would have been shown. Any prejudice which resulted from the entry of the default judgment in this case is directly due to Royal Globe's inaction in its investigation rather than to United's failure to provide prompt notice.
[6] The jurisdictions that have adopted this view are as follows: Clemmer v. Hartford Ins. Co., 22 Cal.3d 865, 881-882 (1978); Rochon v. Preferred Accident Ins. Co., 118 Conn. 190, 198 (1934); Brooks Transp. Co. v. Merchants Mut. Casualty Co., 36 Del. 40, 55 (1933); American Fire & Casualty Co. v. Vliet, 148 Fla. 568, 571 (1941); Farley v. Farmers Ins. Exch., 91 Idaho 37, 40 (1966); State Farm Mut. Auto. Ins. Co. v. McSpadden, 88 Ill. App.3d 1135, 1138 (1980); Miller v. Dilts, 463 N.E.2d 257, 261 (Ind. 1984); Boone v. Lowry, 8 Kan. App.2d 293, 299 (1983); Metropolitan Casualty Ins. Co. v. Albritton, 214 Ky. 16, 19 (1926); Bourgeois v. Great Am. Ins. Co., 222 So.2d 70, 75 (La. Ct. App. 1969); Medico v. Employers Liab. Assurance Corp. 132 Me. 422, 427 (1934); Harleysville Ins. Co. v. Rosenbaum, 30 Md. App. 74, 83-84 (1975); Anderson v. Kemper Ins. Co., 128 Mich. App. 249 (1983); White v. Boulton, 259 Minn. 325, 328-329 (1961); MFA Mut. Ins. Co. v. Sailors, 180 Neb. 201, 203-204 (1966); Solvents Recovery Serv. of New England v. Midland Ins. Co., 218 N.J. Super. 49, 55 (1987); Foundation Reserve Ins. Co. v. Esquibel, 94 N.M. 132, 134 (1980); Bailey v. Universal Underwriters Ins. Co., 258 Or. 201, 219 (1971); Cameron v. Berger, 336 Pa. 229, 233 (1939); Evans v. American Home Assurance Co., 252 S.C. 417, 420 (1969); Oberhansly v. Travelers Ins. Co., 5 Utah 2d 15, 19-20 (1956); Francis v. London Guar. & Accident Co., 100 Vt. 425, 429 (1927); Oregon Auto. Ins. Co. v. Salzberg, 85 Wash.2d 372, 376-377 (1975); Dietz v. Hardware Dealers Mut. Fire Ins. Co., 88 Wis.2d 496, 503 (1979).
[7] Equitable concerns prompted us to grant purely prospective application to the change in law we announced in Johnson Controls, Inc. v. Bowes, 381 Mass. 278, 283 n. 4 (1980).
[8] We need not consider the limited application of this new rule to this case because, as we conclude the judge correctly decided, under existing law, Royal Globe did not make adequate efforts to procure United's cooperation.
[9] Royal Globe's arguments to the contrary  that the search for United's principals was adequate, and that the absence of any inquiry into the circumstances of the accident is irrelevant  lack both factual and legal support. The fact remains that cooperation was lacking in this case due in large part to Royal Globe's failure to exercise diligence in seeking it out. That being the case, it would be ironic to permit Royal Globe to deny liability based on a situation which resulted from its own inaction.