**HOPPY'S OIL SERVICE, INC., Plaintiff,**

v.

**INSURANCE COMPANY OF NORTH AMERICA and Greater New York Mutual Insurance Company, Defendants.**

**Civ. A. No. 90–12851–K.**

United States District Court, D. Massachusetts.

Feb. 7, 1992.

Arthur Paul Kreiger, Anderson & Kreiger, Cambridge, Mass.

Paul R. Koepff, Michael P. Murphy, Mudge Rose Guthrie Alexander & Ferdon, New York City, David B. Chaffin, Hare & Chaffin, Boston, Mass., Stephen T. Keefe, Whiting, Elinoff & Keefe, Weymouth, Mass., Robert W. Byrne, Orlando Conseils, New York City, for defendants Cigna and I.N.A.

Paul R. Koepff, Mudge, Rose, Guthrie, Alexander & Ferdon, New York City, Drew W. Elinoff, Stephen T. Keefe, John L. Kerr, Whiting, Elinoff & Keefe, S. Weymouth, Mass., David B. Chaffin, Hare & Chaffin, Boston, Mass., for defendant Greater New York Mut. Ins. Co.

## MEMORANDUM

KEETON, District Judge.

This action concerns a dispute between plaintiff Hoppy's Oil Service, Inc. ("Hoppy's") and its insurers, Insurance Company of North America ("INA") (for policy periods from July 1, 1981 to July 1, 1983) and Greater New York Mutual Insurance Company ("GNY") (for policy periods from July 1, 1983 to June 30, 1986), regarding the alleged duty of the insurers under certain insurance policies to defend and indemnify Hoppy's in state court environmental litigation, *Feuer, Trustee of Halifax Realty Trust v. Hoppy's Oil Service, Inc.*, Civil Action No. 85–22636 (Plymouth Superior Court) ("the underlying litigation"). Pursuant to the court's November 15, 1991 Procedural order, the following motions came before this court for oral argument on January 13, 1992: INA's Motion for Summary Judgment (Docket No. 18, filed April 12, 1991), GNY's Motion for Summary Judgment (Docket No. 24, filed April 29, 1991), Hoppy's Cross–Motion for Partial Summary Judgment (Docket No. 28, filed May 24, 1991), and Hoppy's Motion to Amend Complaint (Docket No. 27, filed May 24, 1991). The following additional submissions have been received, and, together with the four motions described above, are now before the court for ruling: Affidavit of Drew M. Elinoff (Docket No. 49, filed December 5, 1991); Insurance Company of North America's Additional Motion for Summary Judgment (Docket No. 58, filed January 21, 1992); Greater New York Mutual Insurance Company's Motion to Add Further Ground for Support of Its Motion for Summary Judgment (Docket No. 55, filed January 15, 1992); Supplemental Memorandum in Support of

Defendant, Greater New York Mutual Insurance Company's Motion for Summary Judgment (Docket No. 56, filed January 15, 1992); Defendant Greater New York Mutual Insurance Company's Supplemental Memorandum (Docket No. 53, filed January 13, 1992); Plaintiff's Supplemental Memorandum Re: Summary Judgment in Response to Procedural Order (attached to Docket No. 52, dated January 9, 1992); Plaintiff's Opposition to Defendant's Additional Motion for Summary Judgment (filed January 28, 1992); Reply Memorandum of Insurance Company of North America in Support of Its Supplemental Motion for Summary Judgment on the Ground of Late Notice (Docket No. 65, filed February 4, 1992); Supplemental Affidavit of Michael P. Murphy in Support of Insurance Company of North America's Motion for Summary Judgment on the Ground of Late Notice (Docket No. 64, filed February 4, 1992); Affidavit of Richard T. LaMountain, Jr. (Docket No. 62, filed February 4, 1992); and Affidavit of Ann M. LaPlante (Docket No. 63, filed February 4, 1992). For the reasons stated herein, defendants' motions for summary judgment are granted and plaintiff's motions for summary judgment and for leave to amend its complaint are denied.

## I. BACKGROUND

The following facts are undisputed. Hoppy's leased certain premises in Halifax, Massachusetts, upon which it operated a gasoline station for a period of sixteen years from 1969 to 1985. At the station were located three underground storage tanks filled with leaded, unleaded, and diesel fuels, respectively. On April 23, 1983, a construction company doing work near the station noticed a petroleum leak that was determined to have a source at the underground storage tanks. The diesel tank was found to have a pinhole leak and was replaced. A pipe attached to the unleaded tank had a cracked elbow that was repaired. Both the leaded and unleaded tanks passed a tightness test at that time.

In July 1985, there was once again an occasion to test the soundness of the tanks. The diesel tank was determined to be leaking at the fill pipe. The unleaded tank was found to be releasing gasoline at the rate of 0.786 gallons/hour and the regular tank was releasing gasoline at the rate of 0.073 gallons/hour. No significant corrosion or apparent cracks were discovered on the tanks when they were removed.

The Halifax Realty Associates Trust acquired the property on which the station was situated on July 8, 1985. The trustee, plaintiff in the underlying litigation, initiated suit against Hoppy's on November 22, 1985. The trustee alleges that the leaded and unleaded gasoline tanks were leaking at an unacceptable rate of loss in July 1985 despite the absence of any leakage on June 1, 1982. Hoppy's notified INA of the claims against Hoppy's in March of 1990, and notified GNY in April of 1990. Hoppy's requested each insurer to defend and indemnify Hoppy's. After both insurers refused, this action was commenced in state court on October 16, 1990. The defendants removed the case to this court on November 23, 1990.

## II. SCOPE OF COVERAGE

INA insured Hoppy's under General Liability Policies GLP GO128561 and GLP GO329808, and Garage Policy GAR 215985. GNY provided insurance under Special Multi–Peril Policy 1120Y60350. Each of the policies provided that the insurer would pay on behalf of the insured certain sums in the event of "property damage." Excluded from coverage was property damage caused by the discharge of pollutants unless such discharge was sudden and accidental.

Under the GLP policies and the Special Multi–Peril policy, " 'property damage' means (1) physical injury to or destruction of tangible property *which occurs during the policy period*." GLP GO128561 (Ex. 2 to Docket No. 20); GLP GO329808 (Ex. 3 to Docket No. 20); Special Multi–Peril Policy 1120Y60350 (attached to Docket No. 49) (emphasis added). The garage policy also specifically provides that the insurance covers **"property damage or losses** *that occur during the policy period*." GAR 215985 (Ex. 5 to Docket No. 20) (emphasis added).

The policy periods under which claims are made in this action were July 1, 1981 to July 1, 1982 and July 1, 1982 to July 1, 1983 (INA policies) and July 1, 1983 to June 30, 1984 and July 1, 1984 to June 30, 1985 (GNY policies). It is uncontested that the claims made under the several policies are for discharges of pollution not covered unless under a sudden and accidental exception to a pollution exclusion. (The GNY policy of July 1, 1985 to June 30, 1986 contained a broader pollution exclusion, not excepting sudden and accidental discharges. Hoppy's does not pursue coverage under that policy. Pl.'s Mem. in Opp. to the Defs.' Mot. for Summ. J. and in Supp. of Its Cross–Mot. for Summ. J. (Docket No. 30) at 17 n. 8 [hereinafter Pl.'s Mem.])

It is undisputed that it was on July 8, 1985 that the plaintiff in the underlying litigation first acquired an interest in the property allegedly damaged by the insured's (Hoppy's) conduct. Policy provisions like those described are commonly referred to as providing "occurrence" coverage, as distinguished from "claims made" coverage. Under "occurrence" coverage, as commonly construed and applied in Massachusetts (the law of which applies in this case) and other states as well, an entity making a tort claim against the insured must sustain harm within the period of the policy in order to assert a claim to which the insurance applies. *See* Robert E. Keeton & Alan I. Widiss, *Insurance Law* § 5.10(d)(1) (1988). In the circumstances of the present case, the trust could not have sustained harm before July 8, 1985. For these reasons, the record before this court establishes as a fact beyond any possibility of genuine dispute that the plaintiff in the underlying litigation has not asserted a claim against Hoppy's for injury to trust property occurring during the policy period of any of the policies under which Hoppy's asserts claims here.

In a letter to INA asserting that the claims made by the trust fall within the policy coverage, Hoppy's asserted, "If an occurrence happened during the policy period, it is irrelevant that the property was owned by plaintiff's predecessor at that time." Ex. 5 to Docket No. 31 at 1 n. 1.

That is an erroneous view of the law. Under the "occurrence" coverage provided by the various policies, the insurance applies to claims made by third parties based upon occurrences within the policy period that result in injury to their (the third parties') property interests. At the time of the occurrence alleged in the trustee's complaint, the trust did not have a property interest in the injured property. In July 1985, the trust acquired an interest in property that had already been injured. The trustee's claims are not based on an injury that occurred to trust property in the period of coverage of any of the policies.

In Plaintiff's Supplemental Memorandum Re: Summary Judgment in Response to Procedural Order (attached to Docket No. 52) [hereinafter Pl.'s Supp. Mem.], plaintiff asserts that the trustee's admissions in the underlying litigation establish beyond doubt that the trustee is asserting claims in that litigation "for property damage that occurred during each of the insurance companies' policy periods." *Id.* at 2. However, the trustees factual admissions do not control the court's legal ruling. There may have been, as a factual matter, damage to the property within one or more policy periods. However, it is irrelevant whether the trustee may be able to hold Hoppy's liable for injuries derived from that alleged damage. The alleged damage did not result in injury during the policy periods to the trustee's property, a prerequisite to coverage under the policies. Contrary to plaintiff's contention, my ruling does not establish the date of discovery of the injury as the trigger date for coverage. Nevertheless, an "occurrence" is property damage during the policy period, a predicate that cannot be abstracted from ownership of the property, particularly in view of the policy exclusion for "property damage to (1) property owned or occupied by or rented to the insured, (2) property used by the insured, or (3) property in the care, custody or control of the insured or as to which the insured is for any purpose exercising physical control." '

Although the Massachusetts Supreme Judicial Court has not yet had occasion to consider this precise issue, *see Lumber-*

*mens Mut. Casualty Co. v. Belleville Indus., Inc.*, 407 Mass. 675, 555 N.E.2d 568, 575–76 (1990), this conclusion is consistent with relevant Massachusetts precedent. *See Continental Casualty Co. v. Gilbane Bldg. Co.*, 391 Mass. 143, 461 N.E.2d 209, 215 (1984) ("The time of the occurrence of an accident within the meaning of an indemnity policy is not the time the wrong act was committed, but the time when the complaining party was actually damaged.") (quotation marks and citation omitted).

Hoppy's, in Pl.'s Supp. Mem., argues that Justice Botsford's recent opinion in *Rubenstein v. Liberty Mut. Ins. Co.*, No. 90–1687, slip op. (Oct. 9, 1991), which distinguishes *Gilbane*, requires an opposite result. Justice Botsford rejected an insurer's claim that property damage occurs upon discovery, and concluded that the complaint was reasonably susceptible of a reading that the property damage for which recovery was sought arose out of " 'continuous or repeated exposure' to released oil constituting a single occurrence continuing over time." *Id.* at 11. Thus, Justice Botsford concluded that the complaint "can reasonably be interpreted as alleging an occurrence falling within the period of coverage of each of the defendant insurers." *Id.*

Such an interpretation of the complaint underlying this case, however, is inconsistent with Hoppy's contention that the complaint is susceptible of an interpretation that the leakage was sudden and accidental. The leak was either continuing over time and so excluded from coverage by the pollution exclusion or sudden and accidental and so not within the scope of coverage for "property damage" to the claimant occurring during the policy period.

The conclusion stated is decisive of the outcome in this case.

### III.  DUTY TO DEFEND

■ No duty to defend or to participate in a defense can arise before the insurer has notice of the suit against the insured, or at least of the underlying claim and the likelihood of suit. No notice of suit or of a claim by the trust was provided to either insurer in this case until at least March of 1990. For that reason alone, no duty to provide defense costs could have arisen until at least that time.

■ The underlying premise of that body of precedent recognizing a duty to defend even where no duty to indemnify exists is that there is an ambiguity as to whether a third-party claim is one within the scope of coverage. *See, e.g., Lee v. Aetna Casualty & Sur. Co.*, 178 F.2d 750 (2d Cir.1949) (L. Hand, J.). There has never been any ambiguity in this case. As explained in Part II, above, the underlying complaint does not allege a harm to a property interest within the coverage period of any of the policies. The plaintiff in the underlying litigation could not assert a claim based on pollution causing harm to the trust's property interests, occurring both suddenly and before July 8, 1985. In these circumstances, no duty to defend or even to participate in Hoppy's defense ever arose.

### IV.  Late Notice

A second, independent reason exists for granting summary judgment for the defendants in this case. In the interest of judicial economy, and because of the possibility that my legal rulings in Parts I and II, above, may not be upheld on appeal, *see Lumbermens Mut. Casualty Co. v. Belleville Indus., Inc.*, 407 Mass. 675, 555 N.E.2d 568, 575–76 (1990) (declining to determine the law of Massachusetts on issue of "trigger date"), I conclude that I should rule, in the alternative, on the defendants' motions for summary judgment on the ground of late notice.

INA disclaimed any duty to defend and/or indemnify Hoppy's by letter dated April 16, 1990. (Ex. 34 to Docket No. 20). As one of its grounds for disclaiming coverage, INA asserted that Hoppy's provided late notice to INA, in violation of a condition of its insurance policies. The contracts provide, "If claim is made or suit is brought against the Insured, the Insured shall immediately forward to the Company every demand, notice, summons or other process received by him or his representative." GLP GO128561; GLP GO329808 (Exs. 2, 3 to Docket No. 20); *see* GAR

215985 (Ex. 4 to Docket No. 20). GNY disclaimed any duty to defend and/or indemnify Hoppy's by letter dated April 23, 1990. As one of its grounds for disclaiming coverage, GNY asserted that Hoppy's provided late notice to it, in violation of a condition of its insurance policy substantially similar to the one contained in the INA policy. Special Multi–Peril Policy 1120Y60350 (attached to Docket No. 49).

Under Massachusetts law, an insurer may disclaim coverage for failure to provide seasonable notice only if that failure has prejudiced the insurer. *Darcy v. Hartford Ins. Co.*, 407 Mass. 481, 554 N.E.2d 28 (1990). The loss of critical evidence is sufficient harm. *Id.*, 554 N.E.2d at 31. The destruction of the tanks and accessories in February 1986, Affidavit of Richard T. LaMountain, Jr. (Docket No. 62) and Affidavit of Ann M. LaPlante (Docket No. 63), is such a loss of critical evidence. The affidavits demonstrating destruction of the tanks were submitted by INA in response to Hoppy's assertion, Plaintiff's Opposition to Defendant's Additional Motions for Summary Judgment (no docket number) at 4, that there is no record evidence that the tanks were destroyed after removal. At no time has Hoppy's submitted evidence that the tanks were *not* destroyed. Therefore, INA's affidavits suffice to establish this fact. *See Sheinkopf v. Stone*, 927 F.2d 1259, 1262 (1st Cir.1991) (affidavits "most conventional means" of documenting facts for purposes of advancing summary judgment; court will not draw inferences where implausible or not supported by facts).

Hoppy's argues that it did not learn of the Notice of Responsibility issued to the third-party complainant by the Massachusetts Department of Environmental Protection until it received the amended complaint in the underlying litigation. Hoppy's did not receive that complaint until at least February 14, 1986; however, the tanks had been removed a few days earlier. Hoppy's therefore argues that the late notice did not cause the insurers to lose access to any evidence.

The notice provisions requires the insured to provide notice to the insurer immediately upon being sued. The initial complaint was filed on November 22, 1985, several months before the tank was removed. Hoppy's states, "Until the Trust amended its complaint to allege a claim under Chapter 21E, it did not state a claim for damages against Hoppy's. Hoppy's had no reason to notify the defendants before then." Pl.'s Mem. (Docket No. 30) at 31 n. 19. However, the initial complaint in the underlying action contained the following allegation: "On July 31, 1985 the unleaded gasoline storage tank referred to above was retested. The tank was found to be leaking at an unacceptable rate of loss." Complaint (Ex. 19 to Docket No. 20). Although the initial complaint did not state a cause of action under Mass.Gen.L. ch. 21E, it clearly stated an allegation that could reasonably be construed as claiming that Hoppy's had caused harm to the trust. In fact, Hoppy's itself relies upon that allegation (which remains in the amended complaint) to buttress its assertion that the third-party complainant may prove an occurrence covered by the policies. *See* Pl.'s Mem. (Docket No. 30) at 16. Hoppy's cannot have it both ways. Either there never has been any third-party claim within the scope of coverage (see Part I, above), in which case notice or lack thereof is irrelevant, or else Hoppy's had an immediate obligation to notify its insurers of the claim against it.

Hoppy's assertion that it had no reason to notify its insurers misconstrues the purpose of the condition in the insurance policy. That condition is designed to protect the insurer, though perhaps as well to serve the interests of both the insurer and the insured against the risk of stale uninvestigated claims. It is immaterial that Hoppy's believed the initial complaint failed to state a claim; the complainant was entitled to amend his complaint as he has done. Moreover, the insurance policy provides that the insurer has a *right and duty* to defend the insured. It was not a determination for Hoppy's alone to make that the complaint did not state a claim. Hoppy's did so at its own risk.

Hoppy's failure to seasonably notify its insurers of the claim against it has caused the insurers to suffer actual harm. The tanks were removed and destroyed, there-

by substantially diminishing the chances of proving that the discharge was not sudden. Hoppy's argues that the insurers were not prejudiced because reports generated by others who inspected the tanks and the site have been made available to them. However, the insurers do not have the same interests as others who may have inspected the tanks. Although concerned perhaps with the "how" and "why" of the leaks, the state and the trustee were primarily interested in the existence and scope of the leaks, and had no reason to determine whether the leaks were sudden and accidental. This lack of concern may be reflected in the use of the ambiguous word "leak" in the reports of the investigators, an ambiguity Hoppy's has cited to its advantage elsewhere in its briefs. The insurers were entitled to investigate the suddenness of the leaks, an investigation which is now impossible.

Because the insurers have been prejudiced by Hoppy's late notice, Hoppy's is not entitled to summary judgment on its motion. *Darcy,* 554 N.E.2d at 28. To the contrary, the insurers are entitled to summary judgment on their motions.

### V. Leave to Amend

 Hoppy's seeks leave to amend its complaint in three respects. First, Hoppy's would add an allegation that any release of pollutant may have been sudden and accidental. Second, Hoppy's would add a claim against INA for unfair and deceptive acts under Mass.Gen.L. ch. 93A, § 11 and Mass. Gen.L. ch. 176D, § 2 for refusing to defend it in the underlying litigation. Third, Hoppy's would amend its complaint to substitute INA for CIGNA Property and Casualty Companies, originally and erroneously named herein.

Taking the last first, the substitution was effected by stipulation of the parties (Docket No. 22, filed April 25, 1991), endorsed by the court on April 29, 1991. The substitution is reflected in the caption above.

Hoppy's other proposed amendments would be futile in view of the court's conclusions above. Since it is within my discretion to deny leave to amend a complaint where to do so would be futile, leave to amend is hereby denied.

### VI. CONCLUSION

Even if all the other legal issues briefed and argued by the parties were resolved in favor of Hoppy's, the court would nevertheless be required to enter judgment for defendants. Thus, all of the other issues are moot. I conclude both that I need not and that I should not address them because doing so would be expressing a purely advisory opinion on issues that could not be decisive of this litigation.

Summary judgment as to all counts must therefore be granted to INA and GNY on their respective motions.