O’Toole, J.
The plaintiffs John P. Mistier and Susan Mistier brought this action to recover insurance proceeds under a homeowners’ policy issued by the defendant Horace Mann Insurance Company (“Horace Mann”). Horace Mann has moved for summary judgment on the ground that the Mistlers had breached policy terms requiring them to cooperate in certain respects with Horace Mann in event of a loss and their breach had excused it from its obligations under the policy. The Mistlers assert that Horace Mann must show that it was prejudiced by any breach and that there are genuine factual disputes precluding the grant of summary judgment. Horace Mann argues that it need not show it was prejudiced by the plaintiffs’ breach, but that even if it must, on the undisputed facts, it is entitled to judgment as a matter of law.
BACKGROUND
The Mistlers owned a two-family properly at 1330 High Street in Westwood, Massachusetts, which was damaged by fire on June 13, 1991. At the time, the property was insured against fire damage by Horace Mann. The insurance policy included the following relevant provisions:
CONDITIONS
4. Your Duties After Loss. In case of a loss to which this insurance may apply, you shall see that the following duties are performed:
d. We may reasonably require you to:
(1) exhibit the damaged property;
(2) provide us with records and documents pertinent to the loss; permit us to make copies, and
(3) submit to an examination under oath.
11. Suit Against Us. No action shall be brought unless there has been compliance with the policy provisions and the action is started within two years after the occurrence causing loss or damage . . .
On the date of the fire, the Mistlers were arrested and charged with arson of the insured property. The fire was investigated by representatives of the West-wood Police Department, the Westwood Fire Department, the Massachusetts State Fire Marshal’s Office, and the Federal Bureau of Alcohol, Tobacco and Firearms. In an official fire incident report, a lieutenant of the Westwood Fire Department estimated the loss from the fire at $50,000.
Shortly after the fire, representatives of Horace Mann made a number of unsuccessful efforts to gain access to the property to investigate the cause of the fire and to adjust the value of the Mistlers’ claim. The Mistlers’ lawyer advised Horace Mann that his clients would not permit access to the property nor submit to examination under oath until the pending criminal prosecutions had been concluded. In December 1991, Horace Mann notified the Mistlers that it denied coverage under the policy because of their refusal to permit access to the property. Between the date of the-fire and Horace Mann’s denial of coverage the Mistlers neither permitted the insurer to enter and inspect the property nor submitted to an examination under oath.
The Mistlers sold the property in January 1992 for a price of $105,000. The Town of Westwood had assessed the property before the fire at $ 150,250. After commencement of this litigation, the Mistlers provided Horace Mann with an appraisal, dated January 28, 1994, that valued the property as of June 13, 1991 (the date of the fire) at $154,000. Horace Mann had set an original reserve of $50,000 on the Mistlers’ claim. The limit of liability under the policy was $150,000.
In January 1993, the Mistlers were acquitted of arson by a Superior Court jury. After their acquittal, the Mistlers pressed their claim for the insurance proceeds under the policy. Horace Mann affirmed its previous denial of coverage, and this suit was commenced in June 1993.
DISCUSSION
The insurance policy imposed upon the Mistlers the “duty” to exhibit the fire-damaged property to Horace Mann on request. There is no dispute that they refused to do so. The essential question presented is whether this failure by the Mistlers to perform a contractual duty excused the insurer from its obligation to pay the Mistlers’ claim.
The insurance policy is a contract between Horace Mann and the Mistlers incorporating an exchange of mutual promises. Horace Mann promised to pay to the Mistlers the value of certain losses they might sustain in exchange for their promise to pay premiums and, what is pertinent in the present controversy, to do certain things in making a claim. The insurer’s obligation to pay depended upon the happening of certain *620 events. First, of course, there had to occur a covered casualty loss. When that occurred, the Mistlers had certain duties under the contract, including the language set forth above. In particular, the Mistlers undertook the duty to exhibit the property to Horace Mann when requested. Performance of this duty was necessarily to precede Horace Mann’s payment under the policy.
In general, when one party has a promise to fulfill before the other must perform its promise, performance by the former becomes a condition to the latter’s performance. See Pas-Teur, Inc. v. Energy Sciences, Inc., 11 Mass.App.Ct. 967, 969 (1981) (re-script). If there is an uncured material failure to perform by one party, the other parly is not required to perform. Republic Floors of New England, Inc. v. Weston Racquet Club, Inc., 25 Mass.App.Ct. 479, 485 (1988). As the Restatement of Contracts puts it:
[I]t is a condition of each party’s remaining duties to render performances to be exchanged under an exchange of promises that there be no uncured material failure by the other party to render any such performance due at an earlier time.
Restatement (Second) of Contracts, §237 (1979), cited in Tweedie v. Sibley, 25 Mass.App.Ct. 683, 687 (1988). Comment a to this section elaborates:
[A] material failure of performance . . . operates as the non-occurrence of a condition ... [T]he non-occurrence of a condition has two possible effects on the duty subject to that condition . . . The first is that of preventing performance of the duty from becoming due, at least temporarily . . . The second is that of discharging the duty when the condition can no longer occur.
Horace Mann here argues in effect that the Mistlers’ failure to comply with the provisions of the policy amounted to, in the language of the Restatement, a non-occurrence of a condition to its own performance, and as a consequence, its obligation to pay for the fire loss never became due. See Charles River Park v. Boston Redevelopment Authority, 28 Mass.App.Ct. 795, 804 (1990). Moreover, because “the condition can no longer occur,” Horace Mann contends that its duty to render performance has been discharged.[1] See Cohen v. Commercial Casualty Ins. Co., 277 Mass. 460 (1931); Stover v. Aetna Casualty and Surety Co., 658 F.Supp. 156, 159-60 (S.D.W.Va. 1987).
An important qualification in the application of this principle is that the Mistlers’ failure to perform must have been a material one. Restatement (Second) of Contracts, §237. Further,
In determining whether a failure to render performance is material, the following circumstances are significant:
(a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;
(c) the extent to which the party failing to perform . . . will suffer forfeiture; [and]
(e) the extent to which the behavior of the party failing to perform . . . comports with standards of good faith and fair dealing.
Restatement (Second) of Contracts §241.
There is no automatic rule; whether the non-occurrence of the condition was a material failure to render performance that was due depends on the unique circumstances of each case. Id., comment a. Here, it involves assessment of the extent to which the Mistlers’ refusal to permit Horace Mann to inspect the damaged premises “deprived [Horace Mann] of [a] benefit which [it] reasonably expected” and the extent to which the Mistlers “will suffer forfeiture.”
As to the first, there can be little doubt that in general the opportunity to inspect the damaged premises is a substantial right. It gives the insurer the benefit of first-hand information gathered by persons and according to methods it has confidence in. It is different from, and it may well be thought more valuable than, the opportunity to receive the reports of inspections done by other people, perhaps with other interests and competencies.[2] So, for example, the fact that reports of inspections done by other agencies are available to Horace Mann does not mean that the loss of the opportunity to conduct its own inspection of the damage is not the deprivation of a substantial benefit. If the policy had provided only that the insured should supply information about the loss, then the insurer might not be able to complain that the information came from alternate sources. But the insurer has specifically required that the insured promise to make the property itself available to inspection, not just someone else’s report about the property.[3]
The second relevant inquiry concerning the materiality of the Mistlers’ refusal to permit inspection of the property is whether excusing Horace Mann from its promise to pay the value of the loss would cause the Mistlers to suffer a “forfeiture.” Restatement (Second) of Contracts, §241(c). “Forfeiture” in general means the loss of the benefit of the other party’s expected performance. In an appropriate case, the court can give a party protection from the consequences of his own, immaterial breach if he would suffer harm disproportionate to the harm caused by his own failure to perform. Id., §229. “In determining whether the forfeiture is ‘disproportionate,’ a court must weigh the extent of the forfeiture by the obligee [the Mistlers] against the importance to the obligor [Horace Mann] of the risk from which he sought to be protected.” Id., comment b. In the concrete circumstances of the present case, the question is not simply which interest is the greater or more important, but whether the Mistlers’ loss of coverage is “disproportionate” to “loss” caused the insurer by the failure of the Mistlers to perform their obligation to exhibit the property.
*621 The Mistlers’ loss of insurance coverage for the fire damage is surely a significant one. Whatever the actual dollar value of the fire damage, it is clear it was substantial. It is not disputed that the Mistlers had fully paid the premiums for the insurance coverage, and so they were denied “the very thing paid for.” Johnson Controls, Inc. v. Bowes, 381 Mass. 278, 281 (1980).
On the other side, the Mistlers denied Horace Mann the opportunity to examine the property to determine, not only the dollar amount of the damage, but other information that might be of value to it, such as information that might support an effort to recover any amount paid to the insured by a subrogation action against a tortfeasor. A private investigator acting for the interests of the insurer might understandably be more alert to such possibilities than a public investigator.[4] What might be discovered is necessarily speculative, of course, because the insurer, having been barred from examining the premises, cannot really be expected to be able to say with any specificity what the examination would have shown.
Horace Mann has offered the affidavit of a licensed investigator who asserts that “without being able to examine the fire scene and interview the insureds shortly after the loss, it would be impossible to complete a cause and origin investigation.” Affidavit of Charles G. Moore, ¶11. The investigator also offers his opinion that the information available from the reports of the public authorities “is not a substitute for an actual physical inspection of the interior of the dwelling by . . . someone with experience in private cause and origin investigations.” Id., ¶12. Horace Mann also has submitted the affidavit of an independent insurance adjuster who states his opinion that “it would not be reasonable for an adjuster to evaluate the amount of loss and damage for the results of an interior fire based upon comments in the newspaper, estimates of fire personnel, a market value appraisal, or exterior photos, whether such information is considered individually or collectively, since none of this information is a substitute for an actual physical inspection of the interior of the dwelling by someone with experience in the adjustment of such property insurance claims.” Affidavit of William A. Reynolds, ¶17.[5]
Beyond arguing that the information available from other sources ought to make up for the inability of Horace Mann’s own investigators to inspect the properly themselves, the Mistlers offer nothing that contradicts these affidavits. To meet Horace Mann’s evidence, they cannot rest upon general averments, but must rather offer specific facts showing the existence of a genuine fact controversy. Mass.R.Civ.P. 56(e). Whether an adjuster or investigator could be satisfied with the alternate information is not something the lay factfinder would be able to evaluate without the assistance of a professional opinion. The jury could not, for example, make their own evaluation whether the fire marshal’s report was for Horace Mann the equivalent of an on-site inspection by its own fire investigator. The absence of countervailing evidence from the Mistlers means that, as to that point, there appears to be no genuine factual dispute that the absence of the inspection deprived Horace Mann of real benefit.
Whether in the balance of harms the loss of benefit to the Mistlers is disproportionate to the loss of benefit to Horace Mann is a matter difficult to assess. The Mistlers’ loss is more directly able to be expressed in specific economic terms: it is a sum of money. The loss to Horace Mann is also economic, but it is more difficult to quantify. Horace Mann’s own inspection of the property might not have produced any useful information beyond what others had reported. But then, it might have yielded information that would have supported a lower damage assessment or advanced the prospect that any amount paid might be recovered in subrogation. It might even have yielded information useful to establishing, as between these parties, that the Mistlers were responsible for setting the fire. In any event, the inability to evaluate the likelihood of these possibilities results from the Mistlers’ own refusal to permit the inspection, and it seems unfair to give them the benefit of the uncertainty by concluding in their favor that their quantifiable loss of the contract benefits is disproportionately greater than the unquantifiable loss to Horace Mann.
This last consideration is also relevant to the question whether the Mistlers’ breach was “material” so as to excuse Horace Mann’s performance. The breach was not the result of an innocent or negligent oversight by them, but rather was the consequence of their advised refusal to permit the inspection. See Restatement (Second) of Contracts, §241(e); id., comment f. They are not victims of inadvertence or even “excusable neglect” but of their own deliberate choice.
Taking all these considerations together, it must be said that the consequences to the Mistlers from excusing Horace Mann are not unfairly disproportionate to Horace Mann’s loss of the benefit of a first-hand inspection so as to amount to a forfeiture. Accordingly, under the Restatement formulation, the Mistlers’ failure to exhibit the property was a material breach of the policy because it caused the loss of a reasonably expected benefit to Horace Mann and did not impose an unfair or disproportionate forfeiture upon the Mistlers. Because the breach was material, it constituted the non-occurrence of a condition to Horace Mann’s performance of its obligation under the policy and discharged that obligation. Restatement (Second) of Contracts, §§237, 241.
The parties have argued whether the case is affected by the rule announced in Johnson Controls, Inc. v. Bowes, 381 Mass. 278 (1980). The Mistlers contend that the rule should apply and that before Horace Mann can be excused from performing it must estab *622 lish that it suffered “prejudice” from their refusal to permit an inspection. As to that question, the appellate cases have sent mixed signals.
On the one hand, Royal-Globe Insurance Company v. Craven, 411 Mass. 629 (1992), reflecting the distinction recognized in Cardin v. Royal Insurance Company of America, 394 Mass. 450, 452 (1985), between third-party liability insurance (as in Johnson Controls) and first-party accident insurance (as in Craven), seems to imply that the issue of prejudice to the insurer is not germane to cases involving first-party insurance. Craven held that an insured’s notice of a claim given four months late excused the insurer from paying under the policy, with no discussion at all about whether the insurer had been prejudiced by the tardy notice. If the Johnson Controls principle applied to such a policy, the question of prejudice would likely have been a substantial one, because Craven’s delay in giving notice was relatively short and there was nothing to indicate that the prejudice to the insurer was so obvious the issue did not need to be addressed.
On the other hand, in MacInnis v. Aetna Life & Casualty Co., 403 Mass. 220 (1988), the Court had applied the Johnson Controls principle in a first-party context involving not late notice, as in Johnson Controls, but breach of a “consent-to-settlement” provision. In requiring the insurer to show prejudice in a first-party insurance context, Maclnnis seems inconsistent with the later decision in Craven, where the principle was not applied in a first-party context. Moreover, Maclnnis apparently considered Johnson Controls to apply not just to notice provisions but also to “consent-to-settlement” provisions. Yet in Darcy v. Hartford Insurance Co., 407 Mass. 481 (1990), the Court expressly extended the principle to apply to a "cooperation clause” in a third-party liability context. It is not clear why Johnson Controls should be thought to apply to the consent-to-settlement provision in Maclnnis, but to need to be extended in Darcy to reach a cooperation provision. Moreover, Darcy considered its extension of the principle a “drastic or radical incursion upon existing law,” Darcy, supra, at 491, that should not be given retroactive effect, even to the case sub judice. MacInnis in contrast applied the principle to the case on remand. MacInnis, supra at 229.
Under the contract analysis set forth above, however, it is not necessary to decide whether Johnson Controls should be applied in the context presented here. The principles articulated in the Restatement are adequate. In any event, as a practical matter, the requirement that the insured’s failure to perform must amount to a material breach and not result in a disproportionate loss, or forfeiture, to the breachor is tantamount to a requirement that the insurer must be “prejudiced” in order to be excused from covering the loss.
Here, on the state of the record, there is no genuine issue of material fact that the Mistlers’ failure to permit Horace Mann to inspect the property deprived Horace Mann of a substantial, contracted-for benefit and amounted to a breach excusing Horace Mann from further obligations under the policy.[6] Horace Mann’s motion for summary judgment is therefore ALLOWED.

 See also, Restatement (Second) of Contracts, §225(2): “Unless it has been excused, the non-occurrence of a condition discharges the duty when the condition can no longer occur.”

 The value of an independent opportunity to inquire is taken for granted in another context. In conducting discovery in a civil action, a lawyer may be content at times to rely on information turned up by others, but often insists on conducting his own “investigation” even though the same sources and topics have already been examined by others.

 The provision in the contract requiring the insured to exhibit the damaged property upon request is not language selected by the insurance company, but rather is mandated by the regulatory statute pertaining to Massachusetts fire insurance policies. G.L.c. 175, §99, cl. Twelfth. In addition to serving the private interests of the insurance companies, the requirement may advance the salutary public policy of discouraging and detecting insurance fraud.

 In this case, the public investigators apparently concluded that the Mistlers had set the fire, a conclusion the Mistlers vigorously disputed with ultimate success in the criminal trial. It is not a little incongruous for them now to suggest that the reports of those public investigators ought to be reliable substitutes for that independent examination by the insurer which they prevented.

 Correspondence from both men shortly after the fire indicates that both expressed concern at the time about their inability to inspect the interior of the damaged property. See Exhibit 4 to the Mistlers’ brief in opposition to the motion for summary judgment.

 Or, in the Johnson Controls formulation, the Mistlers’ breach prejudiced Horace Mann as a matter of law.