Fremont-Smith, J.
In this action, the plaintiffs, Eastern Products Corp. (“EPC”), Stephen K. Feinberg, Trustee of Ballardview Realty Trust (“BRT”), and Marjorie Feinberg seek a declaratory judgment against various insurance companies, including defendant Maryland Casualty Company (“Maryland”), determining coverage and/or a duty to defend against claims of environmental contamination of property located at 18-20 Dale St., Andover, Massachusetts. The property in question had been owned by Robert Feinberg until his death in 1986, at which time it was inherited by his spouse, the plaintiff Marjorie Feinberg. The property had been leased for many years by Robert Feinberg to Eastern Products Corp. (“EPC”), of which he was part owner, with his sons, pursuant to an oral lease whereunder EPC manufactured rubber products on the property. It appears that ground water contamination resulted from fires which occurred in stockpiled rubber on the property, during the 1970s and 1980s. After Marjorie Feinberg inherited the property from her deceased husband, she subsequently conveyed it to Ballardview Realty Trust, the trustees of which were her sons. Although ground water contamination was discovered in January 1986 as a result of an environmental investigation done by Goldberg, Zoino & Associates (“GZA”) for Robert Feinberg, no notification of any insurance claim was made to Maryland until 1993, following a determination by the DEP that the ground water contamination would require remediation and following the plaintiffs’ voluntary assumption to DEP of any clean-up liability. When Maryland disclaimed coverage and refused to provide a defense, this law suit followed in 1997.
It is undisputed that the Maryland insurance policy contained the following definition of “persons insured”:
Each of the following is an insured under this insurance to the extent set forth below:
(a) if the named insured is designated in the declarations as an individual, the person so designated, but only with respect to the conduct of a business of which he is the sole proprietor, and the spouse of the named insured with respect to the conduct of such business.
(d) any person (other than an employee of the named insured) or organization while acting as a real estate manager for the named insured.
It is further undisputed that the only “named insured and address” appearing on the policy is “Robert Feinberg c/o Eastern Warehouse Co., Hoosac Pier, 65 Water Street, Charlestown, Mass,” and the insured premises are stated as “18-20 Dale Street, Andover, Mass. — Building or Premises— Bank Mercantile, Manufacturing or Office, Not occupied by the insured (Lessor’s Risk Only).” Robert Feinberg, of course, being deceased, is not a plaintiff, so the question becomes whether any of the plaintiffs, Eastern Produce Corp., Steven K. Feinberg, Trustee of Ballardview Realty Trust or Marjorie Feinberg, are “persons insured.”
It is clear from the definition of “persons insured” under (a), that Marjorie Feinberg, as spouse of the named insured, would be a “person insured” only with respect to the conduct of a business of which Robert Feinberg was the sole proprietor. It is undisputed, however, that Robert Feinberg was never the sole proprietor of the only business which operated on the property, namely, Eastern Product Corp. From the time of EPC’s incorporation in 1973 until its dissolution 1992, EPC’s stock was held by Robert and his four sons — Arthur Feinberg, Richard Feinberg, James Feinberg and Steven Feinberg. Thus, it is clear that Marjorie Feinberg is not the spouse of a designated insured with respect to the conduct of a business of which the designated insured was the sole proprietor.
*360 Plaintiffs urge, nevertheless, that Robert Femberg was the owner of commercial real estate, including the site in question, and that his ownership of such commercial properly should be construed as “a business of which he [was] the sole proprietor.” Plaintiffs’ counsel conceded at argument, however, that Femberg never formed any real estate company, realty trust, or other business entity such as might indicate that his ownership of real estate should, in and of itself, be considered the conduct of a business of which he was the sole proprietor. As noted, he was not the sole proprietor of the only business which did operate on the premises, EDC.
Although it was not raised by plaintiffs in their papers or at argument, the Court notes that the policy definition of “insured person” results in not even the named insured, Robert Feinberg, having been a “person insured” for the Dale Street property, which contradicts the covered premises being “18-20 Dale Street — Buildings or Premises — Bank Mercantile, Manufacturing or Office.” This, plus the language “not occupied by the insured (Lessor’s Risk Only)” could be read to give some support to plaintiffs’ construction of the term “business” to mean his ownership of the property, so as to bring Robert and his spouse within the definition of “insured persons.” Nevertheless, the Court concludes that, unless one tortures the plain meaning of the words used in the definition of “insured persons,” Marjorie Feinberg was not the spouse of an insured person with respect to the site in question.
Plaintiffs further contend that, regardless of the meaning of the definition in subparagraph (a), subpar-agraph (d) which defines an insured person as “any person or organization while acting as a real estate manager for the named insured,” includes the plaintiffs. However, as conceded by plaintiffs’ counsel in oral argument, Ballardview Realty Trust was not even created until after Robert Femberg’s death, so that it could not have acted as a real estate manager for the named insured. Similarly, it was conceded in argument by plaintiffs’ counsel that Marjorie Femberg took no actions with respect to the property until after she inherited it upon her husband’s death, so that she could not have acted as a real estate manager for the named insured. As for Eastern Products Corp., although it was in existence since 1973 and continued in operation until 1992, there is no record support (other than unattested assertions in its brief in opposition) for the proposition that it acted as Robert Feinberg’s manager in regard to the real estate. Under Massachusetts law, plaintiffs bear the burden of demonstrating their status as insured under the Maryland policy. Tatarian v. Commercial Union Co. Ins., 41 Mass.App.Ct. 731 (1996). See Jacobs v. United States Fidelity and Guarantee Co., 417 Mass. 75 (1994). The Court concludes that they have failed to present evidence which could sustain their burden in this regard at trial.
Since, however, the meaning of “insured person” is not entirely free from doubt, the Court will consider below the other arguments of Maryland.
The policy also requires the insured to comply with the following in the event of an occurrence, claim or suit:
(a) In the event of an occurrence, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the insured to [Maryland] or any of its authorized agents as soon as practicable.
(b) If claim is made or suit is brought against the insured, the insured shall immediately forward to [Maryland] every demand, notice, summon or other process received by him or his representative.
(c) The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of the accident.
With regard to the “as soon as practicable” notice provision, when the fires occurred in the stockpiled rubber at various times between 1977 and 1985, it was not immediately apparent that environmental contamination had occurred. In 1986, however, Robert Feinberg hired Goldberg, Zoino & Associates (“GZA”) which investigated, and identified the presence of volatile organic compounds in the groundwater under the property. Although, upon reasonable investigation, the source of this groundwater contamination could have been determined to be the fires,[1] no such further investigation was made until 1992, and no notification of any occurrence to Maryland was made until November 10, 1993 with a supplemental notice in 1997. By the time that Maryland was first notified, knowledgeable witnesses, including Robert Femberg, had died[2] and relevant documents as to the cause and location of the fires had been destroyed by EPC.
The court finds that the seven-year delay between the discovery of contamination in 1986 and the November 1993 notice to Maryland where in the interim, witnesses had died and evidence had been destroyed, constituted untimely notice. See Brackman v. American Employer’s Inc., Co., 349 Mass. 767 (1965) (delay of forty days not “as soon as practicable”); Segal v. Aetna Casualty & Security Co., 327 Mass. 185 (1958) (four months and four days not “as soon as practicable”); Morse v. Employers Liad. Assurance Corp., LTD., 3 Mass.App.Ct. 712 (1975) (three months and two weeks not “as soon as practicable”); Voile-Globe Ins. Co. v. Craven, 411 Mass. 629 (1992) (four-month delay in providing notice was untimely). Under the circumstances, this delay has resulted in prejudice to Maryland. Firemans Fund Ins. Co., et al. v. Valley Manufactured Products Company, Inc., et al., v. Aetna *361 Casualty & Security Co., 765 F. Supp. 1121, 1123-24 (D.Mass. 1991); Darcy v. Hartford Ins. Co., 407 Mass. 481, 487-88 (1990) (stating that when an insurer’s inability to ascertain facts with regard to the occurrence results from insured’s failure to provide prompt notice, this constitutes prejudice); Hoppy's Oil Service Inc. v. Ins. Co. of North America, 783 F.Sup. 1505, 1510 (D.Mass. 1992) (late notice caused prejudice where policy holder had destroyed relevant evidence).
Finally, the Maryland policy clearly states that the “insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense.” Here, it is not disputed that, prior to giving any notice to Maryland, plaintiffs negotiated and then agreed with the DEP to perform all necessary response actions, including an agreement to ensure that the remedial response action would be completed in accordance' with all applicable requirements of M.G.L.c. 21E and the Massachusetts Continuancy Plan. Steven Feinberg signed this undertaking on behalf of EPC, and Mrs. Feinberg and BRT testified at depositions that they understood the agreement. The situation is controlled by Augat Inc. v. Liberty Mutual Ins. Co., 410 Mass. 117 (1991), wherein the court held that, as a result of such an agreement by the insured, the insurer had been deprived of the opportunity to protect its interests and had thus been prejudiced. The Court pointed out that:
the purpose of the policy provision in question is to give the insurer an opportunity to protect its interests, but that Augats breach of the voluntary payment provision undermined that purpose. After Augat agreed to a settlement, entered into a consent judgment, assumed the obligation to pay the entire cost of the cleanup, and in fact paid a portion of that cost, it was too late for the insurer to act to protect its interests. There was nothing left for the insurer to do but issue a check. We conclude, therefore, that no showing of prejudice is required in this case, and that entry of summary judgment in favor of Liberty Mutual was correct.
Id. at 123. Accord: Atlas Tact Corp. v. Liberty Mutual Ins. Co., 48 Mass.App.Ct. 378 (1999).
ORDER
For each of the above reasons, Maryland’s motion for summary judgment is allowed.

This was done only later after claim had been made against Maryland.

Robert died in July 1986, subsequent to the discovery of groundwater contamination by GZA in January 1986.